GEORGIA SOUTHERN AND FLORIDA RAILWAY
COMPANY *v.* MARCHMAN.

1. The petition set forth a cause of action, and was not subject to any of the objections set up in the demurrer.
2. An agent of a railway company, who has authority to make a contract to place cars along the line of railway at points other than stations for the purpose of receiving freight, has power to make an agreement in behalf of the company to receive such freight when deposited along the line of railway to await the arrival of the cars, notwithstanding he may not have authority to make a contract of affreightment.
3. As a general rule, a railway company is not bound to receive freight except at stations ; but it may, as a result of a custom, or as a consequence of an express contract, become obligated to receive freight at a point on its line of railway where there is no station, depot, platform, cars, or agent.
4. The contract having been made with the plaintiff in his own name, he was entitled to maintain an action in his own name for a breach of the contract, although he may have been the agent of the owner of the goods to be transported.
5. The evidence authorized the verdict, and no reason has been shown for a reversal of the judgment.

Argued October 22,—Decided November 11, 1904.

Action for damages. Before Judge Felton. Houston superior court. June 2, 1904.

Marchman brought suit against the Georgia Southern and Florida Railway Company, alleging: On January 29, 1902, the

railway company contracted with plaintiff to furnish him two cars on the day following, at the 31 mile-post, a shipping point on the line of its railway, so that plaintiff could load on the cars and ship 82,600 pounds of cottonseed. Plaintiff commenced to transport the seed to the point agreed upon, and, finding that the cars were not there, notified the company that he had commenced to deliver the seed and that the cars were not there. Plaintiff was thereupon instructed by defendant to continue to deliver the seed, defendant again promising to furnish the cars. By reason of this contract and agreement plaintiff transported the seed to the shipping point in question and placed them at the best and most convenient place, and, after doing so, notified defendant that the seed had been transported to that point, and that it was necessary that cars be furnished. At each time notice was given defendant promised to furnish the cars. Defendant failed to furnish the cars until February 4, 1902, at which time it furnished one car, and the other was not sent until February 13. These cars were promptly loaded with the seed. By reason of the company's failure to furnish the cars promptly as it had agreed to do, the seed were exposed to the elements and weather, and were injured and damaged in a given amount. Plaintiff loaded 44,600 pounds of the seed on one of the cars and shipped them to a manufacturing company in Macon, and that company refused to receive them. Plaintiff was damaged by reason of the deterioration in value of these seed, resulting from the breach by defendant of its contract, in the sum of $284.32. Similar allegations are made with reference to the remainder of the seed, and damage to these seed is placed at $238.11. The entire damage is laid at $522.43. The defendant filed a demurrer to the petition, setting up that the petition shows upon its face that the cottonseed were delivered at a point on the line of defendant's road where there was no station, and were unloaded upon the ground where they were exposed to the weather, plaintiff knowing at the time that there were no cars there in which to load the seed, and if any loss or damage was sustained by plaintiff, it was the result of his own negligence. The demurrer was overruled, and the defendant filed exceptions pendente lite to this judgment. The defendant answered, denying all of the material allegations relating to the alleged cause of action. The trial resulted in a verdict in favor

of the plaintiff, and the defendant complains because the court refused to grant a new trial.

*Hall & Wimberly, R. C. Jordan,* and *R. N. Holtzclaw,* for plaintiff in error. *Duncan & Duncan* and *A. L. Miller,* contra.

COBB, J.   1. There was no error in overruling the demurrer. The petition set forth a cause of action, and was not subject to any of the objections set up in the demurrer.

2, 3. Complaint is made that the court erred in not granting a nonsuit.   The evidence authorized the jury to find that while at the mile-post referred to in the petition there was no depot, station, platform, or agent, the company was accustomed to receive freight on a spur-track at that point; that, by an agreement made between the plaintiff and the master of trains of the defendant company, cars were to be placed on the spur-track at a given time for the purpose of receiving and transporting the seed; that at the time fixed plaintiff carried to the spur-track a portion of the seed to be transported; that, finding no cars there, he notified the train-master that he had transported a portion of the seed and was ready to carry the balance, and asked when the cars would be placed there; that he was informed that the cars would be placed there the next day, and instructed to continue to carry the seed to the place agreed upon; that, in compliance with this direction, the plaintiff continued to haul the seed to this place, and, no cars being there into which they could be loaded, the seed were placed upon the ground at the most convenient and suitable place that the locality afforded for the purpose for which they had been carried to that point; that there were no cars sent there for several days, and before any were sent and the seed loaded into them rain fell upon the seed and damaged them.   If the master of trains was authorized to make this contract in behalf of the company, a finding in favor of the plaintiff for whatever damage he sustained as a result of the rain upon the seed was authorized. The master of trains testified that he had no authority to make a contract of affreightment, but that he did have authority to make contracts for the placing of cars along the line for the reception of freight.   He therefore had a right to make the contract which the plaintiff relies upon; and the question arises, whether the damage resulting to the plaintiff from the seed becoming wet

between the time the cars ought to have been placed at the point agreed on and the time they were actually placed there was the result of a breach of the contract made with the plaintiff. While the master of trains did not have authority to make a contract of affreightment, he did have authority to make an agreement to receive freight on board of cars at different points on the line of railroad, preliminary to a contract of carriage being made by some other agent of the railroad company, and this conferred upon him authority to receive freight for the purpose of transportation, although he had no authority to make a contract of transportation itself. When he agreed with the plaintiff to place cars upon the spur-track at the mile-post referred to, he agreed, in behalf of the company, to receive the freight at that point on board of cars. When the plaintiff came to this place with the cottonseed, and notified the master of trains that no cars were there, and was instructed by him to continue to haul the seed, this was in effect an agreement to receive the seed alongside the track to await cars that would be sent there to receive them. A railroad company is not generally bound to receive freight except at its stations; but it may by custom bind itself to receive it at other points, and certainly it may do this by express contract. See *Fleming* v. *Hammond,* 19 *Ga.* 145. Parties having freight to be transported by rail can not make a good delivery to the railway company by simply depositing the goods along the line anywhere and everywhere. *Central R. Co.* v. *Hines,* 19 *Ga.* 209. But where by agreement freight is deposited at a given point on the line of railway for the purpose of immediate transportation, there seems to be no good reason why such deposit should not constitute delivery to the carrier, whose liability would commence from the time the goods were deposited at the place agreed on. See *Wilson* v. *Railway Co.,* 82 *Ga.* 388 et seq.; *Southern Express Company* v. *Newby,* 36 *Ga.* 635 (2). There was no error in overruling the motion for a nonsuit.

4. It is contended, though, that, even if the cause of action was made out by the evidence, the plaintiff was not entitled to recover, because he was not the owner of the seed, but a mere agent purchasing seed for another, and that the title was in his principal. The railway company, through its authorized agent, dealt with the plaintiff as the owner. No other person was known in

the transaction, and he is entitled to bring an action in his own name for a breach of the contract.   The case of *Carter* v. *Southern Railway Company*, 111 *Ga.* 38, is controlling in principle. It is said, though, that in that case there was a contract of affreightment.   This fact does not render the principle of that decision any the less applicable.   The principle of the case is deeper than its mere surface facts.   The case rules that a carrier can not deny the title of one with whom it has made a contract of affreightment, unless the title of the true owner is being asserted against it.   The principle of the decision precludes the carrier from denying the title of a person with whom it has made a contract to receive freight in anticipation of a contract of affreightment to be subsequently entered into.

5. The evidence was conflicting on many material points.   The jury having taken the version of the evidence which was favorable to the plaintiff's contention, and the law as applicable to the case when so taken being such as to authorize a recovery by the plaintiff, the discretion of the trial judge in refusing to grant a new trial will not be interfered with.

*Judgment affirmed.   All the Justices concur.*