## SOUTHERN RAILWAY COMPANY v. MOORE.

1. A shipper who may have sustained damages by reason of a breach of the common-law duty of a railroad company, as a common carrier, to furnish cars for the transportation of freight within a reasonable time was not prevented by the act of 1905 (Acts 1905, p. 120) from instituting a common-law action for damages, instead of pursuing the remedy provided by that act, touching the fixing by reasonable rules of the railroad commission of a time within which cars should be furnished after written application and "the penalty per day per car" to be paid by the company for failure to supply them accordingly.

2. The suit in the present case, being one to recover damages against a common carrier for a breach of its common-law duty as to the furnish-

ing of cars and transporting freight without unreasonable delay, the petition was not subject to general demurrer.

Decided February 17, 1910.

Action for damages.     Before Judge Reagan.     Pike superior court.     October 9, 1908.

Moore brought suit against the Southern Railway Company, alleging in his petition and the amendment thereto, in brief, as follows: The defendant is a common carrier, and has an office, agent, and place of business at Molena, Pike county, on its line of road, which is a regular station for receiving and delivering freight. He sold certain lumber, amounting to 10,819 feet, to the King Lumber Company, at $15 per thousand feet, to be shipped to Atlanta, and delivered "f. o. b. cars at Molena." The price named was the fair market value of the lumber at that time and place. He began delivering the lumber to the railway company for shipment on November 8, and continued the delivery up to November 20, 1906, when it was completed. When he carried the lumber to Molena to be shipped, the company, by its agent at that point, showed and directed him where to place it on the company's right of way; and he delivered it as so directed, and instructed the defendant how and to whom to ship it, stating to the agent that he had sold it. "f. o. b. the cars at Molena," and could not collect for it until it was loaded on the cars; and the company promised to furnish the cars as soon as possible. "Said Railway Company received and took possession and control of said lumber so delivered and received by it for shipment." Though called on at the time of delivery, and repeatedly since then, to furnish cars upon which to load the lumber, "the said the Southern Railway Company utterly, neglectly [negligently] failed and refused" to do so, and "said company never has furnished him any cars, and said lumber is yet in possession of said Southern Railway Company, lying on its right of way at Molena, where petitioner delivered the same. . . Since the date it was so delivered and lying on said company's right of way since 20th Nov. 1906," lumber of that class has depreciated in market value fifty per cent., and this lumber not being stacked, and being without care or protection, at the time of the commencement of the suit it has no market value and is a total loss to plaintiff as a result of the refusal and failure of the defendant to furnish cars on which to load it, as it was the company's duty to do. (The

suit was brought on March 6, 1908.)     He did not make any written request for cars before delivering the lumber, because he was not aware of any law or rule of the railroad commission requiring it, and it was not the custom of the company to so require; but he delivered this lumber and gave shipping directions just as he had been doing at that station regularly for four or five months immediately before that time.     Defendant had never demanded or notified him of any necessity to make application in writing for cars or give written instructions as to shipping; nor did the defendant give as a reason for not furnishing cars that the application or instructions were not in writing, but told him that it would furnish the cars as soon as possible.     He did not pay the freight in advance or tender it.     This was not demanded, nor was it the reason for said company's refusal to furnish cars.     Damages were laid at $168.28.     Defendant demurred to the petition.     The demurrer was overruled, and defendant excepted.

*Charlton E. Battle* and *Howell Hollis,* for plaintiff in error.

*J. Y. Allen,* contra.

LUMPKIN, J.     (After stating the foregoing facts.)     The principal question in this case is whether the remedy provided by the act of August 23, 1905 (Acts 1905, p. 120), and the rule of the railroad commission in pursuance thereof, operate to repeal or abrogate the common-law right of a shipper to bring an action against a railroad company as a common carrier for a negligent failure or refusal to furnish cars for the transportation of freight within a reasonable time after notice; or whether they furnish a cumulative remedy, so that a shipper may pursue the one remedy or the other. The second section of the act reads as follows: "That whenever a shipper or consignor shall require of a railroad company the placing of a car or cars to be used in car-load shipments, then, in order for the consignor or shipper to avail himself of the forfeitures or penalties prescribed by the rules and regulations of said Railroad Commission, it must first appear that such shipper or consignor made written application for said car or cars to said railroad; provided further, that such Railroad Commission shall, by reasonable rules and regulations, provide the time within which said car or cars shall be furnished after being ordered as aforesaid, and the penalty per day per car to be paid by said railroad company in the event such car or cars are not furnished as ordered; and provided

further, that in order for any shipper or consignor to avail himself of the penalties provided by the rules and regulations of said Railroad Commission, such shipper or consignor shall likewise be subject, under proper rules to be fixed by said Commission, to the orders, rules, and regulations of said Railroad Commission."

1. In 26 Am. & Eng. Enc. Law, 671, it is said: "A statute instituting a new remedy for an existing right does not take away a pre-existing remedy, without express words or necessary implication; the new remedy is cumulative, and either may be pursued. But when the statute gives a right or remedy which did not exist at common law, and provides a specific method of enforcing it, the mode of procedure provided by the statute is exclusive and must be pursued strictly. . . Where a statute which creates a duty or liability provides no form of action or mode by which it may be enforced, the right to an appropriate action is implied in favor of the party in whose behalf the duty or liability arises." Numerous authorities are cited in the notes in support of the text. In President etc. of Farmers' Turnpike Road v. Coventry, 10 Johns. (N. Y.) 389, it was held that though a penalty was provided by a turnpike act for injuring or destroying toll gates, yet the company could bring an action of trespass at common law for such injury to their property. In Maine, by the act of 1821, it was declared that if any person or persons should wilfully, maliciously, or contrary to law take up, remove, break down, dig under, or otherwise injure any part of a certain canal (previously named), or any work connected with or appertaining thereto, such person for such offense should forfeit and pay to such corporation a sum not less than fifty dollars, nor more than five thousand dollars, and should further be liable to indictment for the trespass. It was held that this act did not take away from the corporation the common-law remedy of trespass quare clausum fregit. Cumberland & Oxford Canal Corporation v. Hitchings, 59 Me. 206. In Hill v. Missouri Pacific Ry. Co., 49 Mo. 520, it was held that a statute providing for the recovery of "single damage" against railroad companies for the killing of stock did not provide an exclusive remedy, but was cumulative, and did not displace the common law in the situation to which it applied. In Dygert v. Schenck, 23 Wend. (N. Y.) 446 (35 Am. D. 575), it was held that a statute providing for treble damages under certain circumstances did not prevent an ordinary

action for damages to redress the injury. In Richardson *v.* People's Life & Accident Ins. Co., 92 S. W. 284, the Court of Appeals of Kentucky held that when a statute gives a new right and prescribes an adequate remedy for its enforcement, the prescribed remedy is exclusive; but where a right exists at law or in equity, a statute giving a new remedy gives a cumulative remedy merely. See also People *v.* Craycroft, 2 Cal. 243 (56 Am. D. 331); Troy *v.* Cheshire R. Co., 23 N. H. 83 (55 Am. D. 177); Swarthout *v.* New Jersey Steamboat Co., 48 N. Y. 209 (8 Am. R. 541); Lang *v.* Scott, 1 Blackford, 405 (12 Am. D. 257); Crittenden *v.* Wilson, 5 Cowen, 165 (15 Am. D. 462); Jordan and Skaneateles Plankroad Co. *v.* Morley, 23 N. Y. 552; Donnell *v.* Jones, 13 Ala. 490 (48 Am. D. 59); Narramore *v.* Cleveland etc. Ry. Co., 96 Fed. 298 (48 L. R. A. 68). There is nothing in the decisions of *Jones* v. *Stewart,* 117 *Ga.* 977 (44 S. E. 879), and *Brewer* v. *Nutt,* 118 *Ga.* 257 (45 S. E. 269), in conflict with the current of authority above indicated. The former case arose under an act of the legislature which required dealers in "futures" to register and pay a license tax or occupation tax, making it a misdemeanor to engage in that business without having done so, and providing that one half of the fine imposed should be applied to the payment of the tax. Three of the Justices held, that, as it was made criminal to begin business at all before registering and paying the tax, this and other terms of the act negatived the idea that the tax-collector could issue an execution against one who did business in violation of the law, and that the remedy provided by the statute was exclusive. Two of the Justices dissented, and the sixth was absent. The second case mentioned was similar in kind, except that the specific tax involved was that imposed on dealers in malt liquors. The Justices were divided in opinion, as in the former case. Neither one of these cases involved the repeal of any right of action existing at common law in favor of one person against another. The whole system of imposing specific taxes and requiring registration of occupations, and the mode of enforcing such requirements by summary execution or by prosecution, is legislative and statutory in character, both as to the right and the remedy. The case of *Gorman* v. *Hammond,* 28 *Ga.* 85, was also in relation to the enforcement of returning property for taxation.

In North Carolina the General Assembly enacted a statute which

prescribed a forfeiture of $25 per day for delay of local shipments beyond five days after the receipt of goods by a railroad company. It was held by the Supreme Court of that State that this did not exclude the right to bring an action for damages for a breach of the common-law duty of the carrier. Branch v. Wilmington etc. R. Co., 77 N. C. 347. In Florida the legislature conferred upon the railroad commission the authority to make a rule on the subject of what is called "reciprocal demurrage," in terms less explicit than those employed in our statute. The commission adopted a rule which, among other things, declared that when cars were promptly loaded and shipping instructions given, if the cars were not carried forward within forty-eight hours, or within twenty-four hours in case of perishable articles, "said railroad company shall be liable to said shipper for the payment of one dollar per car per day, or fraction of a day, that said car or cars are thus detained or held." The Supreme Court held that "the particular powers and duties prescribed in other acts were not intended to affect and do not affect the powers and duties of the commission, as defined by the railroad-commission statute and the amendments thereto. The constitution and the statute contemplate cumulative remedies to make effective the general purpose of regulating intrastate transportation by common carriers." 56 Fla. 617, 621 (47 So. 969).

This court has not directly passed upon the question here involved; but there are analogies pointing in the direction taken by the general line of authorities. A statute provides that when any sheriff or other officer shall levy an execution or other process on property claimed by a third person not a party to such execution, such person may interpose a claim on oath and have it returned to the court for trial. Civil Code, § 4611 et seq. It has been held that the claim laws, as a remedy for the true owner, are cumulative, not exclusive. *Whittington* v. *Wright, 9 Ga.* 23; *Bodega* v. *Perkerson, 60 Ga.* 516. The Civil Code, § 2298, declares, that where goods are transported over several connecting railroads, the last which has received the goods as "in good order" shall be responsible to the consignee for any damage, open or concealed, done to the goods, and such companies shall settle among themselves the question of ultimate liability. It has been held that this did not prevent a shipper from suing another than the last company, but furnished a cumulative remedy to the consignee. *Falvey* v. *Georgia*

*Railroad,* 76 *Ga.* 597 (2 Am. St. R. 58). By sections 2317 and 2318 provision is made, where freight is conveyed by two or more carriers, the responsibility of each of which ceases upon delivery to the next, for requiring one of them, upon application, to trace the freight and inform the applicant when, where, how, and by which carrier it was lost, damaged, or destroyed; and for a failure to do so the carrier is declared to be liable as if the loss or damage occurred on its line. But certainly this would not exclude any of the ordinary remedies against any of the carriers who might be liable to the shipper. Prior to the act of 1898 (Acts 1898, p. 50), there stood upon the statute book a provision for a summary method of procedure against railroad companies for injuring stock or destroying or damaging property. Civil Code, §§ 2252, 2253, et seq. But it has never been claimed that this statutory remedy was destructive of the common-law right of action for damages. Indeed it was rarely invoked, and suits have most generally been brought in the ordinary form. A general principle of law has been codified in § 3906 of the Civil Code, as follows: "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff." It has neither been considered as unlawful to authorize the injured person, in a proper case, to recover punitive damages, nor has it been thought that he was bound to do so, and could not proceed to recover his actual damages only. By the Civil Code, § 1766 (§ 1445 of the Code of 1882), it is declared that if any trespass or damage shall be committed in any enclosure not protected in accordance with the fence laws, by the breaking in of any animal, and if the owner of the enclosure shall kill or injure it, he shall be liable in three times the damage. In *Lee* v. *Nelms,* 57 *Ga.* 253, it was held, that if a plaintiff desires to recover on the basis of treble damages under this statutory provision, he must bring himself within its terms; but it was recognized that the statute did not supersede the common-law right of action for a tort, in which compensatory damages could be claimed. Other illustrations might be given.

In *Southern Railway Co.* v. *Melton,* ante, 277 (65 S. E. 665), it was said in the opinion: "Whether the remedy provided in the act of 1905 is exclusive of any other mode of procedure for the collec-

tion of damages arising from a breach of the carrier's general duty to furnish cars for the transportation of freight, or whether it is cumulative of the common-law remedy, or whether there may be an election, is not a matter which now requires consideration." In *Chattanooga R. Co.* v. *Thompson,* ante, 127 (65 S. E. 285), it was held that a recovery of damages might be had against a carrier for breach of a contract to furnish cars to a peach grower; and it was tacitly recognized that the act of 1905 in no way affected the right to recover damages for delay in furnishing cars under a contract. The same is true of the case of *Elberta Peach Co.* v. *Georgia Southern & Florida Ry. Co.,* ante, 685 (66 S. E. 779).

It has been said that it is the duty of a railroad company to provide facilities for the transportation of goods, but that this duty is not an absolute one; and that the company must furnish cars sufficient to transport goods offered in the usual and ordinary course of business, but that it is not bound to anticipate and prepare for an unexpected press of business; and that a plaintiff who seeks to recover from a railroad company for a failure to furnish cars must aver and prove that the goods were properly offered for transportation. 4 Elliott on Railroads, § 1470. Also, that the plaintiff who demands damages of a railroad company for a failure to furnish cars must show an offer to bring himself into contractual relations with the carrier; and that where cars are required there must be a reasonable demand and an offer of goods for transportation. § 1476. Hutchinson on Carriers (3d ed.), § 495. In Illinois Central R. Co. *v.* Bundy, 97 Ill. App. 202, it was said, that where a shipper requires a car at a certain station for his exclusive use, he must give notice to the railroad company; and that after this has been given, the company has a reasonable time in which to furnish the car. In codifying the law in relation to common carriers, the Civil Code, § 2278, declares: "A common carrier holding himself out to the public as such is bound to receive all goods and passengers offered that he is able and accustomed to carry, upon compliance with such reasonable regulations as he may adopt for his own safety and the benefit of the public." Section 2282 provides that "The common carrier is bound not only for the safe transportation and delivery of goods, but also that the same be done without unreasonable delay." It has long since been declared to be the law, and is now embodied in our code, that "For every right there shall

be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other." §4929.

Here, then, was a right of action arising from the application of common-law principles, and recognized by our code. Was it repealed or abrogated by the act of 1905? A repeal of an existing law must be either express or by implication. It has sometimes been said that a repeal may result from a revision designed to create a new and independent system, and to dispose of the whole subject of legislation, and which is evidently intended as a substitute for the former law. The theory of repeal by revision has its legitimate application; but the intention to repeal one law giving a right of action, merely because of the passage of another, is not to be too freely presumed, else the whole doctrine of concurrent remedies might be upset. It was once questioned whether, under the constitution of 1877, there could be a repeal of a statute by implication. It is now settled that there may be such repeals, but they are not favored, and the legislative intent to accomplish that result must be clear. *Edalgo* v. *Southern Ry. Co.,* 129 *Ga.* 258 264 (58 S. E. 846), and citations.

There is no express repeal or exclusion, in the act of 1905, of the right to sue for damages. Is there a clear legislative intent that it should repeal the pre-existing right of a shipper to bring an action for damages against a carrier for a breach of duty in respect to furnishing cars or transporting his freight with due diligence? The act provided for a liability to pay an amount per day per car, to be prescribed by the commission, for the failure to furnish cars, if ordered in the manner required. It did not undertake to provide any method for ascertaining the extent of damages which might be inflicted upon a shipper; nor did it say in terms that the remedy so given should be exclusive. The amount specified by the commission might be a reasonable fixed amount, say one dollar per day per car. If a shipper desired to proceed by virtue of that act, it was incumbent on him to comply with its terms. It stated that if a shipper or consignor should require the placing of a car or cars to be used in car-load shipments, "then, in order for the consignor or shipper to avail himself of the forfeitures or penalties prescribed by the rules and regulations of said railroad commission, it must first appear that such shipper or consignor made written application for said car or cars to said railroad." It was declared that the railroad

commission should, by reasonable rules and regulations, provide a time within which cars should be furnished after being thus ordered, "and the penalty per day per car to be paid by said railroad company in the event such car or cars are not furnished as ordered." It then continued, "and provided further, that, in order for any shipper or consignor to avail himself of the penalties provided by the rules and regulations of said railroad commission, such shipper or consignor shall likewise be subject, under proper rules to be fixed by said commission, to the orders, rules, and regulations of said railroad commission." Thus twice in the second section of the act occurs a statement that in order for the consignor or shipper to avail himself of the forfeitures or penalties provided for in it, and in the rules of the railroad commission to be adopted in pursuance of it, he must do certain things. This indicates much more strongly an intention to provide a cumulative remedy, and to permit the shipper to avail himself of it upon certain terms, than a repeal of a pre-existing remedy. Again, the third section of the act (which has since been repealed by the act of 1907) provided, that, "before any railroad company is subjected to the penalties provided by this act, said railroad commission shall require said railroad company to show cause therefor; and if sufficient cause is shown, then said company shall be relieved from any further liability under this act." Assuming that the hearing thus provided for applied to the "reciprocal demurrage" or amount subject under the act to be recovered by the shipper, as well as to the public penalty recoverable by the railroad commission, which was provided for in the fourth section, shall it be held that the General Assembly meant in all events to exclude a shipper from suing a carrier for damages arising from the breach of the common-law duty to him in regard to furnishing cars or not delaying transportation, to limit him absolutely to the recovery of the amount fixed by the rule of the railroad commission, and as to that to submit the question of liability to the commission, and relieve the company from paying even the limited amount, if the commission should so decide? It would require a very strong implication to show that the legislature, in endeavoring to confer upon shippers an additional means of enforcing prompt furnishing of cars, absolutely excluded them from a resort to the courts for a recovery of damages, and in lieu thereof, without any right of choice of remedies, placed upon them the restrictions above indi-

cated. We think that the act was intended to give an additional safeguard and remedy, which a shipper might adopt if he so desired, and not to destroy his right of action for damages for failure of duty by the carrier as to furnishing cars or transporting freight without unreasonable delay.

Counsel for plaintiff in error cited and relied on the decision of the Court of Appeals in *Pennington & Evans* v. *Douglas, Augusta & Gulf Railway Co., 3 Ga. App.* 665 (60 S. E. 485). The judgment was doubtless correct. But we regret that we can not concur with our learned brethren in all that was said in discussing the case. The action there was clearly brought under the act of 1905. The allegations, as reported, showed beyond controversy that it was an effort to enforce the liability provided by that act. The Court of Appeals so construed it, and we concur in that construction. So considered, it was held to be fatally defective. Mere statements of counsel, oral or written, in argument, as to what they intended to claim, could not alter the patent fact that the suit was of that nature, and was not a suit to recover damages for a breach of the common-law duty. The Court of Appeals also held, that if the action should be treated as one seeking to recover damages for a breach of the duty of the carrier aside from the act, it was insufficient in its allegations. These rulings were enough to terminate the case; and that court evidently entertained the view that the judgment could be rested on the first ground alone, as it was said in the opinion, "the judgment of the lower court sustaining the demurrer generally might well have been sustained upon the principle that, being plainly an action for the penalty or damages provided by the Steed act, it was incapable of being transformed into a common-law action for damages against the carrier."

Reliance is also placed by counsel for plaintiff in error on the decision in Texas and Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426 (27 Sup. Ct. 350, 51 L. ed. 553). But a careful comparison of that decision and the act of Congress on which it rested, with the present case and the act of the legislature now under consideration, will show that the two subjects considered were quite different, and that there is no conflict between the two decisions. If there be any apparent difference at first view, it will disappear when the act then under consideration and that now involved are compared. In the opinion in the case cited Mr. Justice White gave

a brief synopsis of what was called the act to regulate commerce, or what is more commonly called the act to regulate interstate commerce, as it existed at the time when the shipments under consideration were made. From that statement the following extracts are taken: "The act made it the duty of carriers subject to its provisions to charge only just and reasonable rates. To that end the duty was imposed of establishing and publishing schedules of such rates. It forbade all unjust preferences and discriminations, made it unlawful to depart from the rates in the established schedules until the same were changed as authorized by the act, and such departure was made an offense punishable by fine or imprisonment, or both, and the prohibitions of the act and the punishments which it imposed were directed not only against carriers but against shippers, or any person who, directly or indirectly, by any machination or device in any manner whatsoever, accomplished the result of producing the wrongful discriminations or preferences which the act forbade. It was made the duty of carriers subject to the act to file with the Interstate Commerce Commission created by that act copies of established schedules, and power was conferred upon that body to provide as to the form of the schedules, and penalties were imposed for not establishing and filing the required schedules. The Commission was endowed with plenary administrative power to supervise the conduct of carriers, to investigate their affairs, their accounts, and their methods of dealing, and generally to enforce the provisions of the act, . . to hear complaints concerning violations of the act, to investigate the same, and, if the complaints are well founded, to direct not only the making of reparation to the injured persons, but to order the carrier to desist from such violation in the future." Provision was made for the enforcement of the orders of the commission by invoking the authority of the courts of the United States, and prima facie effect in such courts was given to the findings of fact made by the commission. The suit then before the court was brought by an oil company against a railroad company, alleging that the latter had exacted from the former the payment of an unjust and unreasonable rate on the shipment of certain car-loads of cottonseed from points in Louisiana to Abilene, Texas, and that the rate exacted was also discriminatory, and amounted to charging more for a shorter than for a longer haul. One point involved was whether

the act referred to above prevented the shipper from maintaining an action at common law in a State court to recover for what were alleged to be excessive and unreasonable freight rates exacted on interstate shipments, where the rates charged were those which had been duly fixed by the carrier according to the act and had not been found to be unreasonable by the interstate commerce commission. The Supreme Court of the United States held that such an action in the State court could not be maintained. The act of Congress prohibited a departure from the established rates, while the plaintiff sought to recover because the railroad company adhered to them. The act provided how such established rates could be changed. The plaintiff sought in effect to have them changed by being declared unreasonable and by recovering a portion of the charge, upon proof offered in a State court. The act, dealing with the subject of interstate commerce, under the clause of the constitution of the United States on that subject, provided a mode of redress, and the tribunals in which it should be had. The plaintiff sought to disregard this provision altogether, and to recover under a common-law action, in a different tribunal. It would seem plain that it would be inconsistent for Congress to assume exclusive jurisdiction over the subject of establishing interstate freight rates, and at the same time to allow the rates, after being so established, to be entirely disregarded, and to have it left to juries in many jurisdictions to determine what rates were reasonable, and therefore what rates should be established. The two things can not be reconciled. So in our own State, where freight rates have been fixed by the railroad commission in accordance with the law, it would hardly be held that they could be merely ignored, and suits be brought in various courts, so as to leave it to the determination of different juries to declare ab origine whether a given rate charged by the carrier was reasonable. And the same may be said of some other things primarily entrusted exclusively to the commissioners. But from what has already been said, the difference between the two cases will appear. The case of Texas & Pacific Ry. Co. v. Cisco Oil Mill, 204 U. S. 449 (27 Sup. Ct. 358, 51 L. ed. 562), is similar to the one above referred to; and the decisions cited in the opinion in the case of the Texas Pacific Railway Company do not conflict with the ruling here made. Reliance was also placed upon Endlich on

the Interpretation of Statutes, §470; but a reading of the entire section will show that it recognizes the rule above discussed.

2. This being an action based on the common-law liability of the carrier, and not on the act of 1905, it does not appear that it was subject to general demurrer. It was alleged, among other things, that the defendant was a common carrier for hire; that it had been receiving lumber for shipment from this plaintiff in the past; that it held itself out as willing to receive the shipment now involved, and promised from time to time to furnish cars; that under direction of its agent he placed the lumber at a certain point on its right of way (*Georgia So. & Fla. Ry. Co.* v. *Marchman,* 121 *Ga.* 235 (48 S. E. 961); *Atlantic & Birmingham Ry. Co.* v. *Howard Supply Co.,* 125 *Ga.* 478 (54 S. E. 530)); that he urged them repeatedly to furnish the necessary cars, informing them of the necessity for prompt shipment and of the damages which would accrue to him from delay; and that they negligently failed and refused to furnish such cars and allowed the lumber to remain lying on their right of way from November 20, 1906, until the suit was brought, March 6, 1908, thereby causing it to be injured and damage to accrue to the plaintiff. The allegations of the petition were sufficient to withstand a general demurrer, and the grounds of special demurrer were not urged.

*Judgment affirmed. All the Justices concur.*

FISH, C. J. I concur in the judgment. If the railroad commission has the power, under the act of 1905, to make a rule requiring railroad companies to furnish cars to shippers within a given time and to prescribe a penalty for failure to comply with such rule, then, for the reasons given in the opinion of the court, a shipper is not restricted to a recovery of the penalty for a violation of the rule. If the railroad commission has no power to prescribe such a rule and penalty, which I think is true (see dissent in *Southern Railway Co.* v. *Melton,* 132 *Ga.* 277 (65 S. E. 665)), then of course it follows that the only remedy a shipper has, who may have sustained damages for a breach of the common-law duty of a railroad company to furnish him cars, is a common-law action for damages.