### 3045.   ZUBER *v.* SOUTHERN RAILWAY CO.

1. The sums which an offended shipper may recover from a delinquent carrier under the several storage rules of the railroad commission are not penalties in the strict sense of the word, but are fixed civil punitory liabilities (in the nature of a substitute for punitive damages) which the shipper has the option of suing for and recovering at his election, instead of pursuing his common-law remedies for redressing the same delinquency.
2. The railroad commission is an administrative, and not a legislative, body. It has only such powers as the legislature has expressly, or by fair implication, conferred upon it.
3. Under the constitution the General Assembly is made the legislative body of the State, and it can not delegate its powers; but it may confer upon administrative bodies the power to make regulations and to deal in a somewhat legislative way with matters which are quasi legislative, but which are predominantly administrative in their nature.
4. The general power imposing punishment for wrongs or neglect is a legislative function, and this is true whether the punishment is to be imposed by the infliction of a criminal penalty, or of civil punitory liability. In some cases, when the determination of what would

be a just and reasonable penalty depends upon a consideration of so much data or of so many details and exigencies that the legislature could not intelligently and justly fix the amount of the penalty without further inquiry and investigation than is expedient in the ordinary course of the passage of legislation, it may in general terms declare the punishableness of the thing to be penalized, and leave to an administrative body or officer the ascertainment and declaration of what the amount of the penalty should be.

5. The question as to what amount of penalty should be assessed against a railroad company for delinquency in furnishing cars and in other respects relative to its duty of receiving, forwarding, and delivering freight promptly is a question involving inquiry into so many facts and conditions capable of accurate ascertainment only "outside of the halls of legislation" as to make it a matter which the legislature could delegate to the railroad commission; provided that the legislature itself in general terms performed the purely legislative act of declaring, expressly or by fair implication, that the delinquency should be punishable.

6. As to the matters dealt with in storage rule 9 of the railroad commission, the legislature declared the general punishableness of the delinquencies there dealt with, and left to the railroad commission the working out of the details of the penalty, and therefore the civil punitory liability imposed by that rule is enforceable. Prior to the adoption of the act of 1907 (Laws 1907, p. 72), enlarging the powers of the railroad commission, the legislature had never declared, either expressly or by any fair implication, that the delinquencies dealt with in storage rules 1, 10, and 12 of the commission should be punishable otherwise than by the infliction of the penalty of $250 imposed by the fourth section of the act approved August 23, 1905 (Laws 1905, p. 121). Hence, so much of those rules as imposes an additional civil punitory liability is unenforceable as to matters occurring prior to the passage of the act of 1907.

DECIDED JULY 25, 1911.

Action for penalty; from city court of Atlanta—Judge Reid. November 5, 1910.

*Moore & Pomeroy, W. W. Hood,* for plaintiff.

*McDaniel, Alston & Black,* for defendant.

POWELL, J. The plaintiff's action was dismissed on general demurrer, and only a pure law point is presented, namely, Did the act of August 23, 1905 (Georgia Laws 1905, p. 120), confer upon the railroad commission power to enact so much of storage rules 1, 10, and 12 as names and fixes the amount which the shipper may recover from the carrier in the event the latter is delinquent as to the matters dealt with in those rules? The cause of action arose after the passage of the act of 1905, above referred to, and prior to the act of 1907 (Laws 1907, p. 72), enlarging the

powers of the commission. The case is controlled by the law as it stood in the latter part of the year 1905, and during the year 1906. It will be difficult to understand the precise question here presented, unless we quote somewhat at length from both the act of 1905 and the rules in question. The act of 1905 is as follows:

"An act to further extend the powers of the railroad commission of this State, and to confer upon the commission the power to regulate the time and manner within which the several railroads in this State shall receive, receipt for, forward and deliver to its destination all freights of every character, which may be tendered or received by them for transportation; to provide a penalty for non-compliance with any and all reasonable rules, regulations and orders prescribed by the said commission in the execution of these powers, and for other purposes.

"Section 1. Be it enacted by the General Assembly of Georgia, and it is hereby enacted by authority of the same, that from and after the passage of this act, the railroad commission of this State shall be, and is, hereby vested with full power and authority to make, prescribe, and enforce all such reasonable rules, regulations and orders as may be necessary in order to compel and require the several railroad companies in this State to promptly receive, receipt for, forward and deliver to destination all freights of every character which may be tendered or received by them for transportation; and as well such reasonable rules, regulations and orders as may be necessary to compel and require prompt delivery of all freights, on arrival at destination, to the consignee.

"Sec. 2. Be it further enacted by the authority aforesaid, that whenever a shipper or consignor shall require of a railroad company the placing of a car or cars to be used in car-load shipments, then in order for the consignor or shipper to avail himself of the forfeitures or penalties prescribed by the rules and regulations of said railroad commission, it must first appear that such shipper or consignor made written application for said car or cars to said railroad; provided further, that such railroad commission shall, by reasonable rules and regulations, provide the time within which said car or cars shall be furnished after being ordered as aforesaid, and the penalty per day per car to be paid by said railroad company in the event such car or cars are not furnished as ordered, and

provided further, that in order for any shipper or consignor to avail himself of the penalties provided by the rules and regulations of said railroad commission, such shipper or consignor shall likewise be subject, under proper rules to be fixed by said commission, to the orders, rules and regulations of said railroad commission.

"Sec. 3. Be it further enacted by the authority aforesaid, that before any railroad company is subjected to the penalties provided by this act, said railroad commission shall require said railroad company to show cause therefor; and if sufficient cause is shown then said company shall be relieved from any further liability under this act.

"Sec. 4. Be it further enacted by the authority aforesaid, that for the violation of any such rules, orders or regulations, so established by said commission, the railroad company so offending shall incur a penalty in a sum not exceeding two hundred and fifty dollars ($250), to be fixed by the jury after suit is brought therefor, under the provisions of existing laws regulating the institution and prosecution of suits for penalties incurred by railroad companies in consequence of violations of the rules and regulations prescribed by said commission."

The rules which are about to be quoted were prescribed under the first section of the act, but it is important to notice also the second section, because that section and storage rule 9 of the commission, adopted in pursuance of it, have been the subject of several decisions of the Supreme Court and of this court; and it will be necessary to determine in the course of this discussion how far the decisions which have been made as to rule 9 affect the question raised as to these other rules to which section 2 does not relate. The parts of rules 1, 10, and 12 which are here material are as follows:

Rule 1: "(a) Upon the arrival at destination of any and all freights, the delivering line shall, within twenty-four hours thereafter, give to consignees thereof legal notice of such arrival. For failure to give such legal notice of arrival, the railroad company at fault shall pay to the consignee so offended the sum of one dollar per car per day on car-load shipments, and one cent per hundred pounds per day on less than car-load shipments, for each day during which the terms of this rule are not complied with."

Rule 10: "Whenever freight of any character, proper for transportation, whether in car-load quantities or less, is tendered to a railroad company at its customary place for receiving shipments, and correct shipping instructions given, such railroad company shall immediately receive the same and issue bills of lading therefor. And when a shipment is thus received, the same must be carried forward at a rate of not less than fifty miles per day of twenty-four hours, computed from seven o'clock a. m. of the day following the receipt of shipment. . . For failure to so receive or transport shipments as hereinbefore provided for, the railroad company at fault shall, within thirty days after demand in writing is made therefor, pay to the shipper so offended, or other party whose interest is affected thereby, the sum of one dollar per car on car-load shipments, and one cent per hundred pounds, subject to a minimum of five cents, on less than car-load shipments, for each day or fraction thereof that the terms of this rule are not complied with."

Rule 12: "Railroad companies are required to make prompt delivery of all freight, upon the arrival thereof at destination. For failure to deliver at freight depot, or to place loaded cars at an accessible point for unloading the same, within forty-eight hours, exclusive of Sundays and legal holidays, computed from seven o'clock a. m., the day after the arrival of same at destination over its line, the railroad company at fault shall pay to the shipper or consignee of such goods one dollar per day on car-load shipments, and one cent per hundred pounds per day on less than car-load shipments, for each day or fraction thereof that such delivery is so delayed."

By rule 9 (which, as has been stated already, does not apply to the case at bar, but which has been before the courts for adjudication several times) the carrier is required to furnish cars for loading within four days after written request and, in case of failure, it allows the offended shipper to recover $1 per day per car for each day's delay in excess of the free time allowed. The plaintiff in his petition alleged a number of failures on the part of the defendant to comply with the respective terms of rules 1, 10, and 12, and a refusal on the defendant's part to pay the sums which the rules allowed as a result of these failures, and further alleged that his claim had been presented to the railroad commission in pursuance

óf section 3 of the act and had been duly allowed after the defendant had failed to show sufficient cause to relieve it from liability. The trial judge held that the commission exceeded its authority in naming and fixing the amounts which the shipper might recover from the carrier for a violation of the rules in question, and therefore sustained the demurrer to the plaintiff's petition.

1. The exact nature of this liability which attaches against the carrier and in favor of the shipper on account of a violation of these rules of the railroad commission, and which in the second section of the act of 1905 is called a penalty, has never been judicially declared. Some progress towards a definition has been made in the cases of *Southern Ry. Co.* v. *Melton,* 133 *Ga.* 277 (65 S. E. 665), and of *Southern Ry. Co.* v. *Moore,* 133 *Ga.* 806 (67 S. E. 85, 26 L. R. A. (N. S.) 851), in the first of which it was held not to be a penalty in the sense in which that word is used to express the notion of criminal punishment for wrong; and in the other of which it was held not to be such liquidated damages as to preclude the shipper from resorting to his common-law remedy at his election. See, also, *Southern Ry. Co.* v. *Atlanta Sand Co.,* 135 *Ga.* 35 (68 S. E. 807). Giving due effect to all of these cases, it may be said that these rules fix a liquidated sum in the nature of civil punitive damages which an offended shipper may recover from a delinquent carrier by pursuing the course mentioned in the act, but that the remedy thus given is not exclusive, and the shipper may nevertheless at his election bring his common-law action, in which event he must prove his damages and leave to the jury the assessment of the amount. The question, therefore, narrows to this: Did the commission have the power to provide that a breach of its rules on the part of the carrier should result in the shipper's having the right to recover punitive damages without further proof of bad faith or any of the other elements which usually characterize punitive damages, and to recover them in a fixed amount, instead of leaving the amount to the assessment of the jury according to their enlightened consciences?

2. It is well settled that the railroad commission is an administrative, and not a legislative, body. It has only such powers as the legislature has expressly, or, by fair implication, conferred upon it.

3. The constitution makes the General Assembly the legislative body of the State, and it cannot delegate its general legislative

powers. Nevertheless, it may confer upon administrative bodies quasi-legislative functions which it itself might perform, but could not so adequately perform directly as it could by delegating them.

4. For example, the matter of declaring that common carriers shall charge reasonable rates is a legislative function, and the matter of declaring what shall be a reasonable rate is a quasi-legislative function, and the legislature, after outlining as its policy for the regulation of rates that they should be established upon a reasonable basis, and having thus dealt with the strictly legislative phase of the matter, might go forward and declare specifically what the rate should be for this or that particular service, thus performing also the quasi-legislative function; but it would ordinarily be highly inexpedient for the legislature to undertake to deal directly and specifically with this latter phase, owing to its limited facilities for acquiring the vast mass of data and of particular and technical details which enter into the fixing of rates. Hence, it legitimately delegates this power to the administrative body which possesses these facilities—the railroad commission.

To say that wrongful or neglectful conduct shall be penalized is such a legislative function as can not be delegated by the legislature. That this is true as to penalties of a criminal nature will not be questioned, and we believe that the same principle applies where a wrong or neglect is penalized by giving the person against whom the wrong or neglect particularly operates the right to recover punitive damages in a civil action. In other words, it is purely a legislative function to authorize the imposition of punitory liability, whether that liability is to be enforced in a civil or in a criminal action. The legislature may authorize an administrative body or officer to make regulations and may declare it to be punishable for any person to violate those regulations; but, unless the legislature itself gives its sanction, at least in general terms, to the imposition of punishment, or of civil redress in the nature of punishment, for an act or general class of acts, no merely administrative board can provide for the punishment of that act or class of acts and supply the details of how and when the penalty or punishment shall be imposed. Cf. United States v. Grimaud, 220 U. S. 506 (31 Sup. Ct. 480), and cases there cited.

5. As to the portion of rule 9 of the railroad commission in which it is provided that the offended shipper may recover of the

delinquent carrier $1 per day per car for the delay after the speci-
fied free time has expired, the Supreme Court in the *Melton* case,
supra, held that, since the legislature had declared that the com-
mission should make the rule on the subject and fill in the details
and name the penalty, the rule in this respect was enforceable and
the penalty named by the commission collectible. It is plain, from
a study of the whole opinion in that case (as well as of the opinion
in the *Atlanta Sand Co.* case, supra), that the court took the view
that as to this specified thing of failing to furnish cars after
written demand, the legislature had not only given its sanction that
the delinquency should be penalized, but had in terms required the
commission to name the penalty as a part of its rule on the sub-
ject; and that, the legislature having performed the strictly legisla-
tive function of declaring that the violation of the commission's
rule on the subject should be punishable, it did not delegate a legis-
lative duty, but delegated only a quasi-legislative duty, which was
largely of an administrative character, when it authorized the com-
mission to say how much per day per car that penalty or punitory
liability should be. This ruling of our Supreme Court, thus in-
terpreted, is somewhat of an extension of the doctrine so ably set
forth by Mr. Justice Lamar in the Grimaud case, supra, but it is
an extension which may be justified by the nature of the subject-
matter of the penalty.

As to some subjects it might be easy for the legislature not only
to declare that a delinquency should be redressed by civil or crimi-
nal penalty, but also for it justly to assess and fix upon the exact
amount of the penalty, or at least to set certain limits. As to
other subjects, the determination of the amount of the penalty or
of the basis on which it should justly be laid may involve such an
amount of investigation and a consideration of so many particular
exigencies as to make the fixing of the amount of the penalty only
quasi-legislative and predominantly administrative in character;
and the determination of what would be a just and reasonable
penalty to allow for a failure to furnish the cars and of what amount
of delay or free time should elapse before liability for the penalty
should begin would seem to be one of the subjects in which the ad-
ministrative elements predominate. While the fact that the com-
mission has dealt with this subject by laying a uniform penalty and
creating a uniform free time as to all classes of freight and as to all

classes of carriers might militate against the contention that the fixing of the penalty was a thing which the legislature could not have easily done directly, still it must be kept in mind that it is the nature of the subject itself, and not the manner in which it has been dealt with by the administrative body, which determines whether the power to deal with it has been legally delegated or not, and it may readily be seen that the fixing of a just penalty for a violation of the rule in question is a subject which the commission might very naturally have dealt with by entering into the field of particularization and classification. For instance, the commission, instead of saying that the free time for furnishing all classes of cars should be four days, might have said that as to fruit cars one day should be allowed, as to grain cars two days, as to cars for cotton three days, as to cars for lumber four days, as to cars for ordinary merchandise five days, and so on; or it might have classified the railroads, and have said that those—say in class A—with great facilities for obtaining and furnishing cars should have two days, while those in class C, with small facilities, should have four days, and so on. It might have said that the penalty for failing to furnish  fruit cars should be $4 per day, sand cars $1 per day, and so on, or that the roads of one class should pay one penalty for delinquency, and that the roads of another class differently situated should pay a different amount. As the Supreme Court of the United States declared in Marshall Field & Co. *v.* Clark, 143 U. S. 694 (12 Sup. Ct. 505, 36 L. ed. 294) : "The legislature can not delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which can not be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation." The fact that the railroad commission decided after investigation that the matter of penalizing delinquency as to furnishing cars could be adequately and justly dealt with by a simple and uniform rule on the subject renders that matter none the less a legitimate "subject of inquiry and determination outside of the halls of legislation," to the end that the action of the law which the legislature itself enacted should be adequately and justly

exerted in the general manner intended. This we conceive to be the rationale of the ruling in the *Mellon* case, supra, and the reconciliation between that case and the Grimaud case, supra.

6. The *Mellon* case dealt with rule 9 of the commission, which was adopted under the express authorization of the second section of the act of 1905. And the validity of that rule and of the penalty, or rather civil punitory liability, provided in it was upheld. The rules involved in the case at bar, so far as the penalty feature is concerned, rest on no such basis. The legislature did not as to the matters dealt with in the first section of the act (and it must be kept in mind that the rules here in question were adopted under the authority of that section) say anything as to penalty, except in so far as the fourth section of the act lays the criminal penalty of $250. As to the civil punitory liability which any of these rules imposes, the entire act, except the second section, is silent so far as any express language is concerned.

Counsel for the plaintiff in error concede this, but say that the power to impose this punitory liability is by fair and necessary implication given also as to the matters dealt with in section one of the act. They call attention to the fact that by the language of that section as to these matters the commission "is vested with full power and authority to make and enforce all such reasonable rules, regulations, and orders as may be necessary in order to compel and require the several railroad companies" to be prompt in the performance of the duties dealt with in these rules. They stress the words "enforce," "compel," and "require." We think that it is plain that the legislature intended that the commission should make rules specifying the time within which the railroad companies should perform the various acts necessary to the receipt, forwarding, and delivery of freights, and that the time should be so fixed as to make the companies act promptly, but that as to these matters (except as to the solitary case of furnishing cars, dealt with specifically in the second section) the legislature evinced no intention of penalizing delinquencies by imposing any punitory civil or criminal liability other than the penalty of $250 mentioned in section 4 of the act. If the act be construed in the light of its title, this conclusion becomes only the more irresistible. The title of the act reads thus: "An act to further extend the powers of the railroad commission of this State, and to confer upon the

commission the power to regulate the time and manner within which the several railroads in this State shall receive, receipt for, forward and deliver to its destination all freights of every character, which may be tendered or received by them for transportation; to provide a penalty for non-compliance with any and all reasonable rules, regulations and orders prescribed by the said commission in the execution of these powers, and for other purposes." The title speaks of regulation as to "time and manner," and the words "enforce," "compel," and "require" do not appear in that context. The title uses the words "a penalty," it is true; but these words undoubtedly refer to the penalty laid in the fourth section of the act (and it was so expressly held in the *Melton* case, supra), and not to the civil punitory liability imposed by these rules. If the act itself had not provided a specific penalty, thus giving a punitory sanction sufficient ordinarily to insure obedience, there might be greater color to the argument that the legislature in the use of the words "enforce," "compel," and "require," as they appear in the context already quoted, evinced such a clear intention of putting some punitory sanction back of the rules as to authorize the commission to perform the merely administrative function of saying how much that penalty or civil punitory liability should be. But, as it is, the legislature has named one penalty and has suggested no other.

It seems to us that in the rules now before us the railroad commission attempted not only to perform the administrative act of assessing the amount of a penalty, but also to perform the purely legislative function of creating the element of civil punishableness as to things which the legislature had not declared to be punishable otherwise than criminally. As the legislature had not paved the way by furnishing in advance the legislative object on which the administrative act was to operate, so much of these rules as lays the penalties in question must fall. As an unfertilized egg, which contains all the elements of the embryonic chicken except that one thing which distinguishes fertile eggs from the unfertile, will not hatch, so these rules, though they contain all the elements of a valid basis for legal action, except the one vitalizing thing of express legislative authorization, are legally sterile, and cannot support a cause of action; and the court did not err in sustaining the general demurrer.                    *Judgment affirmed.*