## 3749, 3750. SOUTHERN RAILWAY COMPANY *v.* INMAN, AKERS & INMAN (two cases)

An action brought under section 2 of the act approved August 23, 1905 (Acts 1905, p. 120), to recover from a railroad company the sum fixed by rule of the railroad commission for failing to furnish cars on demand, is so far penal in its nature as to be barred, under the provisions of § 4370 of the Civil Code (1910), after one year from the date upon which the cause of action arose.

DECIDED SEPTEMBER 30, 1912.

Action for penalty; from city court of Atlanta—Judge Reid. September 21, 1911.

*McDaniel & Black, E. A. Neely,* for plaintiff in error.

*Moore & Pomeroy, W. W. Hood,* contra.

POTTLE, J. These were actions brought in 1910 under the provisions of the act approved August 23, 1905 (Acts 1905, p. 120), to recover from the railway company for its failure to promptly furnish cars ordered at various times during the years 1906 and 1907. The point is made that the actions were barred by the statute of limitations, and as we have reached the conclusion that this point is well taken, no other question need be dealt with.

A consideration of the question upon which the case turns renders it necessary to classify the nature of the recovery authorized by section 2 of the act of 1905 and storage rule 9 of the railroad commission. The announced purpose of the act, as set forth in its title, was to further extend the powers of the railroad commission of this State and to confer upon the commission, among other things, the power "to provide a penalty for non-compliance with any and all reasonable rules, regulations, and orders prescribed by the said commission in the execution of these powers." Section 2 of the act (Civil Code of 1910, § 2635) requires that the commission "shall, by reasonable rules and regulations, provide the time within which said car or cars shall be furnished after being ordered as aforesaid, and the penalty per day per car to be paid by said railroad company in the event such car or cars are not furnished as ordered," and that "in order for any shipper or consignor to avail himself of the penalties provided by the rules and regulations of said railroad commission, such shipper or consignor shall likewise be subject, under proper rules to be fixed by said commission, to the orders, rules and regulations of said railroad

commission." Section 3 provides that before any railroad company "is subjected to the penalties" provided by the act, the company shall be required to show cause before the commission and be by it adjudged liable. The commission, by rule, fixed one dollar per car, for each day of delay after four days, as the sum which a defaulting company should pay. The cause of action arises immediately upon the company's default, and the question is, within what time must the action be brought?

Section 4370 of the Civil Code (1910) provides: "All actions by informers, to recover any fine, forfeiture, or penalty, shall be commenced within one year from the time the defendant's liability thereto was discovered, or by reasonable diligence could have been discovered." This statute was held to be applicable to a suit against a telegraph company, brought under the act of 1887 (Acts 1887, p. 111), to recover the sum fixed by that act to be paid by the defaulting company. *Western Union Telegraph Co.* v. *Nunnally,* 86 *Ga.* 503 (12 S. E. 578). That decision settles for us two propositions, viz., first, that the sum recoverable under the act of 1887 was a penalty for breach of a public duty; and, secondly, that the suing plaintiff was an informer within the meaning of the statute now codified in § 4370 of the Code of 1910, notwithstanding he obtained the entire recovery. After considering the history and origin of this statute, Mr. Chief Justice Bleckley, delivering the opinion, said: "We have no doubt that the code intended to sum up all cases provided for in these two previous statutes, and treat them as cases brought by informers. If this construction is not sustainable, then the code prescribed no limitation whatever for such an action as the one now under consideration, unless it falls within section 2916, which is in these words: 'All suits for the enforcement of rights accruing to individuals under statutes, acts of incorporation, or by operation of law, shall be brought within twenty years after the right of action accrues.' We think it incredible that actions for penalties should have been limited to one year when brought by an informer, and to twenty years when brought by others, not falling within the strict, literal description of informers. There is every reason why the omission of a telegraphic company to deliver a message with due promptness should not be left open to suit for twenty years. If any penalty whatever ought to be prosecuted for speedily, it would be one of this nature.

To leave the company exposed to suit for the almost innumerable transactions of this kind for twenty years, would be simply absurd." In *Central of Georgia Railway Co.* v. *Huson,* 5 *Ga. App.* 529 (63 S. E. 597), this court held that § 4370 of the code was applicable to a suit brought against a common carrier, under § 2770 of the code, to recover double the amount of an overcharge in or overpayment of freight.

Were it not for previous decisions both of this court and of the Supreme Court, we would have no difficulty in holding that so much of the act of 1905 as relates to the recovery of what has been denominated "reciprocal demurrage" is purely penal in its nature, and was intended by the General Assembly as a punishment for the breach of a public duty. A penalty is often imposed by the exaction of a sum of money for the infraction of a civil right. For example, it has been said that a penalty is: "a punishment inflicted by a law for its violation;" "a sum of money imposed by statute, to be paid as a punishment for the commission of a certain act." "A penalty is a punishment imposed by law or contract for doing or failing to do something that it was the duty of a party to do." "A penalty is in the nature of punishment for the nonperformance of an act, or for the performance of an unlawful act. It involves the idea of punishment, whether enforced by civil or criminal procedure." "The word 'penalty' and the word 'forfeiture,' as used in statutes, are generally used synonymously. A statute properly designated as penal is one which inflicts a forfeiture of money or goods by way of penalty for breach of its provisions." Words and Phrases, vol. 6, pp. 5272, 5273. The very purpose of the act was stated in the title "to provide a penalty for non-compliance with the rules and regulations of the commission." By section 2 certain things are required of a shipper before he can avail himself of the "forfeitures or penalties," prescribed by the commission; and it is expressly provided that the commission shall fix the penalty per day per car to be paid by the carrier. By section 3 it was provided that before a carrier could be "subjected to the penalties" of the act, it should have an opportunity to be heard before the commission. All of the things required of the carrier by the act were owing by it to the public generally; they were public duties and for their breach the penalties named in the act were imposed. The sum recovered by the shipper may or may

not be compensatory. He may have sustained no damage; he need not show that he has. He makes out his case by proving the default and a compliance by him with the conditions precedent prescribed by the act. Again, his damage may be far in excess of the amount of the penalty. It is plain to us that the General Assembly intended to provide a punishment for the carrier's breach of its public duty as a means of compelling the performance of that duty. The conclusion that the act was intended to be at least mainly penal seems to be irresistible, when we consider that while this court held that the remedy afforded by the act was exclusive (*Pennington* v. *Douglas Ry. Co.*, 3 *Ga. App.* 655 (3), 60 S. E. 485), the Supreme Court later took a different view, and held that, notwithstanding the act of 1905, suit might be brought for the actual damages which a shipper had sustained from the carrier's failure to promptly furnish cars. *Southern Ry. Co.* v. *Moore*, 133 *Ga.* 806 (67 S. E. 85, 26 L. R. A. (N. S.) 851).

This brings us to a consideration of the several decisions construing the act. In none of them was the question now being dealt with presented, nor is there any authoritative language which requires a conclusion contrary to that which we have reached. In the *Pennington* case, supra, Judge Russell spoke of the sum recoverable for failure of the carrier to furnish cars as "the liquidated damages provided for by the Steed bill (which are denominated as a penalty);" but that language must be considered in the light of the fact that the court's opinion that the remedy offered by the Steed bill was exclusive of an action for damages was subsequently held by the Supreme Court to be erroneous. In *Smith & Simpson Lumber Co.* v. *Louisville & Nashville Railroad Co.*, 4 *Ga. App.* 714 (62 S. E. 472), the Chief Judge characterized an action under the act as one "for damages arising from a breach of a public duty imposed upon the defendants by a rule of the railroad commission, and to recover the amount of damages fixed by the commission for the violation of the rule." That case was likewise decided before the decision of the Supreme Court that the remedy under the act was not exclusive. In *Southern Railway Co.* v. *Melton*, 133 *Ga.* 277 (65 S. E. 665, 26 L. R. A. (N. S.) 851), the main question dealt with was as to the power of the General Assembly to delegate to the railroad commission the authority to impose punishment for breach of a public duty. It was held, in substance, that as the Gen-

eral Assembly itself, in the act, declared that a penalty should be imposed, and had simply left to the commission the power to investigate and declare by rule a reasonable sum to be exacted from the carrier, the act would be upheld. In characterizing the sum to be recovered the court said: "A consideration of the terms of the act of 1905 will show that the word 'penalty,' in the second section, was not employed in its strict sense, but as meaning a reasonable amount to be fixed by the rule of the commission, recoverable by the shipper on account of a failure to furnish cars to carry his freight within a reasonable time named in the rule." In *Southern Railway Co.* v. *Atlanta Sand & Supply Co.,* 135 *Ga.* 35 (68 S. E. 807), it was held that storage rule No. 9 of the railroad commission, properly construed, was reasonable and did not violate any of the constitutional rights of the carrier. The nature of the recovery allowed by the rule was not discussed, it being simply referred to in the language of the act as a forfeiture or penalty. The matter was considered by this court in *Zuber* v. *Southern Railway Co.,* 9 *Ga. App.* 539 (71 S. E. 937), where Judge Powell thus states the conclusion of the court (p. 544) : "The exact nature of this liability which attaches against the carrier and in favor of the shipper on account of a violation of these rules of the railroad commission, and which in the second section of the act of 1905 is called a penalty, has never been judicially declared. Some progress towards a definition has been made in the cases of *Southern Railway Co.* v. *Melton,* 133 *Ga.* 277 (65 S. E. 665), and *Southern Railway Co.* v. *Moore,* 133 *Ga.* 806 (67 S. E. 85, 26 L. R. A. (N. S.) 851), in the first of which it was held not to be a penalty in the sense in which that word is used to express the notion of criminal punishment for wrong, and in the other of which it was held not to be such liquidated damages as to preclude the shipper from resorting to his common-law remedy at his election. See, also, *Southern Ry. Co.* v. *Atlanta Sand Co.,* 135 *Ga.* 35 (68 S. E. 807). Giving due effect to all of these cases, it may be said that these rules fix a liquidated sum in the nature of civil punitive damages which an offended shipper may recover from a delinquent carrier by pursuing the course mentioned in the act, but that the remedy thus given is not exclusive, and the shipper may nevertheless at his election bring his common-law action, in which event he must prove his damages and leave to the jury the assessment of the amount."

For the purposes of this decision we think it immaterial whether we speak of the recovery as "civil punitive damages" or as a strict statutory penalty, or what other name may be given it. Certain it is that the amount recoverable was not the exclusive substitute for the shipper's damage, certain it is that it is not strictly cmpensatory, and equally certain is it that no proof of damage is necessary to recover. What we hold is that the action is so far penal in its nature as that the suit must be brought within one year after the cause of action arises. It is immaterial that the person suing receives the whole of the recovery, for, as Judge Bleckley said in the *Nunnally* case, supra, he, "if not literally an informer, is designated by statute to take the fruits of an action brought for the violation of a public penal law." Our conclusion is that the defendant's demurrer should have been sustained      *Judgment reversed.*