53295. GEORGIA REAL ESTATE COMMISSION et al. v. HORNE.

SUBMITTED JANUARY 7, 1977 — DECIDED JANUARY 18, 1977 — REHEARING DENIED FEBRUARY 8, 1977 —

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Chief Deputy Attorney General, Don A. Langham, Deputy Attorney General, Michael J. Bowers, Senior Assistant Attorney General, J. Michael Walls, Staff Assistant Attorney General,* for appellants.

*Gambrell, Russell, Killorin & Forbes, Harold L. Russell, James H. Bratton, Jr., Frederick G. Boynton,* for appellee.

DEEN, Presiding Judge.

1. Racial discrimination in housing is a serious problem which demands rectification; to this end Code Ann. § 84-1421 gives the real estate commission the power to suspend or revoke a realtor's license if he so discriminates. However, where the state confers a license to engage in a profession, the license becomes a valuable right which cannot be denied or abridged without due notice and a fair and impartial hearing before an unbiased tribunal. *Leakey v. Georgia Real Estate Commission,* 80 Ga. App. 272 (55 SE2d 818). And the authority which seeks to discipline the license holder must carry the burden of demonstrating the specific violation which justifies the sanction sought. Atlanta Attractions, Inc. v. Massell, 463 F2d 449 (5th Cir. 1972). We take this to mean that the real estate board must demonstrate that Mr. Horne is guilty of "refusing, because of race, color, national origin or ethnic group, to . . . sell . . . real estate for sale . . . to prospective purchasers" or that he has "demonstrated unworthiness or incompetency to act as a real estate broker or salesman in such manner as to safeguard the interest of the public; or

any other conduct . . . which constitutes dishonest dealing." Code Ann. § 84-1421 (1) and (25).

The facts in this case are as follows: Mr. Horne represented the owner of a house which was on the market for sale. On July 24, 1974, Mr. and Mrs. Robinson executed an offer to buy the house, the agreement containing "Special Stipulations" that the seller would pay loan discount points up to 4-1/2 points and that he would provide a termite letter to the effect that the house was free and clear of infestation; it was further agreed that if the cost of securing the termite letter exceeded $100 the seller could rescind the entire contract. On July 25, the seller accepted the Robinsons' offer.

Several days before the closing Mr. Horne learned that the loan had been approved at 5 discount points and that the cost of securing the termite letter would exceed the agreed limit of $100; Mr. Horne however did not disclose to the seller, whom he represented, that the "Special Stipulations" of the contract could not be met. On the day set for the closing the seller, who apparently was having second thoughts about the sale, traveled to Atlanta and met with Mr. Horne; Mr. Horne still did not tell the seller of his options to rescind the contract, or to absorb the excess costs himself or to negotiate with the Robinsons in order to have them absorb the extra costs. It was not until Mr. Horne and the seller reached the office where the closing was to take place that Mr. Horne began to go over the figures with his client.

At that point the prospective buyers arrived; Mr. Horne and the seller, neither of whom had ever met the Robinsons, were surprised to discover that the buyers were black. Mr. Horne thereupon privately telephoned the termite company and told them to increase their estimate of the necessary termite repair and bond from $185 to $507.50. This accomplished, Mr. Horne returned to the closing and told the Robinsons that they would have to absorb additional costs of $625 in order to secure the house, this sum consisting of the excess 1/2 loan discount point and the secretly inflated $507.50 "termite" costs; in truth the additional costs would have been the excess discount points and some $185 in "termite" costs. The Robinsons refused to absorb the purported $625 excess;

the transaction did not close.

It was Mr. Horne's testimony that he acted to protect his client, the seller, from charges of racial discrimination — that his client was dissatisfied with the contract for purely monetary reasons but since the prospective buyers were black he had to manufacture an "out" so as to avoid charges of racial discrimination. Mr. Horne therefore "upped" the termite letter costs so that the buyers would back out of the sale rather than his client.

The trial judge was of the opinion that the issue was one of motivation — was Mr. Horne motivated by racial discrimination or by a desire to protect his client from charges of such discrimination — and concluded that all the evidence against Mr. Horne was circumstantial and as equally probative of his theory as that of the commission; the commission's finding that Mr. Horne was guilty of racial discrimination was reversed. We disagree with the trial judge's premise that motivation is the crucial element; Code Ann. § 84-1421 (1) prohibits racial discrimination in the sale of real estate and the motivation behind a broker's actions is irrelevant if in fact such actions amount to racial discrimination in the sale of property. For example, a broker's "motivation" behind refusing to sell a house in a white neighborhood to a black may be to protect the prospective black buyer from intimidation and harrassment by white neighbors but refusing to sell under these circumstances would still be prohibited discrimination.

It is undisputed that the contract for the sale of this house could have been rescinded for the stipulated reasons of excess cost; the option also existed to offer the house to the Robinsons if they would absorb the excess loan discount points and termite costs. The only explanation of why the contract was not rescinded for reasons of excess cost was the expressed desire to avoid charges of racial discrimination; Mr. Horne chose the option to "offer" the house to the Robinsons if they would agree to assume the extra charges but having so chosen he was under the obligation not to discriminate in this offer. And if the sole motivation was to avoid charges of racial discrimination, the Robinsons would have been offered the house at the contract price plus the legitimate excess

of discount points and "termite" costs. Instead there is direct evidence that after the discovery that the buyers were black they were presented with the "option" to buy a house at some $625 more than the contract price, of which some $300 was fictitious "termite" cost concocted by Mr. Horne's private telephone call; and this was done in the hope that the Robinsons would "refuse" to close the deal rather than have the seller "refuse" to sell. This is ample evidence to support the finding that Mr. Horne was guilty of racial discrimination in the sale of this house.

The Superior Court of DeKalb County may not "substitute its judgment for that of the agency as to the weight of the evidence on questions of fact" but may reverse the decision if it is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Code Ann. § 3A-120 (h) (5). The record in this case reveals evidence substantiating the commission's findings of fact and conclusions of law. *Georgia Dept. of Human Resources v. Holland,* 133 Ga. App. 616 (1), 617 (211 SE2d 635); *Georgia Real Estate Commission v. Hooks,* 139 Ga. App. 34 (227 SE2d 864).

2. The superior court based its reversal in part on an alleged procedural defect in Mr. Horne's hearing — that the commission's deliberations were in public. The court did not in its final order rule the "Sunshine Law," (Code Ann. § 40-3301 et seq.) to be unconstitutional; this court has no jurisdiction to do so. The superior court may reverse the commission's decision if it were in "violation of constitutional or statutory provisions" or "made upon unlawful procedure." Code Ann. § 3A-120 (h) (1), (3). The commission's public deliberations were not only made in full compliance with the law, but would have been nugatory had they been conducted otherwise. Code Ann. § 40-3301. In this regard, the superior court was in error.

3. Code Ann. § 3A-114 (5) provides for a procedure whereby the commission may select and appoint a hearing officer to hear a contested case; such a procedure was employed in Mr. Horne's case. The hearing officer, after determining that Mr. Horne had indeed discriminated against the Robinsons, presented his "Recommended Action"; it was his decision that there were mitigating circumstances in the case ("temporary

lapse in good judgment ignited by an explosive situation," "difficult situation," licensed for fourteen years with no previous complaint) and recommended a one-year suspension of the license. While the record is confusing on this point, it seems that the hearing officer's decision and "Recommended Action" was the "initial decision" in the matter and in the absence of Mr. Horne's application to the commission for review or the commission's decision to review on its own motion, such decision would have become the final disposition of the case. Code Ann. § 3A-118 (a). Here, however, the commission on its own motion ordered a review of the hearing officer's decision; as the result, the commission accepted briefs and heard oral argument. The commission decided to adopt the hearing officer's findings of fact and conclusions of law but rejected the "recommended" suspension and instead ordered the revocation of Mr. Horne's license.

The Superior Court of DeKalb County found that the full commission's failure to explain why it imposed the harsher sanction of revocation instead of the recommended one year's suspension was error and ordered the case remanded for this reason. The commission urges that having ordered a review of the hearing officer's decision within the 30-day limit, it has "all the powers it would have in making the initial decision," Code Ann. § 3A-118 (a), including the right to revoke as well as suspend Mr. Horne's license, Code Ann. § 84-1421. "Nothing in this Chapter [3A-1] shall be held to diminish the constitutional rights of any person. . ." Code Ann. § 3A-122. The United States Supreme Court has recently had occasion to construe due process as it relates to the imposition of a harsher sentence upon retrial of a criminal case after a successful appeal of the defendant's original conviction. North Carolina v. Pearce, 395 U. S. 711 (89 SC 2072, 23 LE2d 656); Colten v. Kentucky, 407 U. S. 104 (92 SC 1953, 32 LE2d 584); Chaffin v. Stynchcombe, 412 U. S. 17 (93 SC 1977, 36 LE2d 714). While it is true that these cases are criminal and not civil, the Due Process Clause of the Fourteenth Amendment requires the state to afford any person due process before depriving him of his property as well as his life or liberty; since a license to engage in a profession is a property right,

the Supreme Court's pronouncements on due process are authority for analyzing the case sub judice.

The Supreme Court in Pearce makes it clear that due process of law requires that vindictiveness must play no part in the resentencing of one who has successfully appealed his original conviction; "[i]n order to assure the absence of such a motivation [vindictiveness], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear . . . [a]nd the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." North Carolina v. Pearce, 395 U. S. 711, 726, supra. Subsequent decisions have illustrated that it is the possibility of vindictiveness in an appellate procedure and in resentencing that violates due process and not merely the possibility that a harsher sentence may be imposed. Colten v. Kentucky, 407 U. S. 104, supra (holding that the possibility of vindictiveness does not inhere in a two-tier system of appeals with the right to a de novo hearing after conviction in an inferior court); Chaffin v. Stynchcombe, 412 U. S. 17, supra (holding that the possibility of vindictiveness does not inhere in jury sentencing if the jury is unaware of the defendant's original sentence).

Turning to Code Ann. § 3A-118 (a) an aggrieved licensee or the commission may seek within 30 days a review of the hearing officer's decision and disposition of the case; if neither the licensee nor the commission seeks review within that time, the hearing officer's decision becomes final. The commission's role after it elects to proceed initially with the hearing officer "deciding" the case, is essentially to serve an appellate function, in which it "reviews" the hearing officer's decision. This procedure is unique in several respects: It is "two-tier" but the "hearing" before the commission is for review of the hearing officer's decision and not for a de novo adjudication; while it is essentially appellate, not only may an aggrieved licensee petition for review, the commission may order a review on its own motion; since the commission on review has "all the powers it would

have in making the initial decision," there is the possibility for the imposition of a harsher sentence on a licensee after "review." The crucial question, as we view it, is whether the possibility of vindictiveness inheres in this procedure such that due process requires the commission to explain its decision to impose a stricter sanction on a licensee than that which would have been imposed had a "review" not been made.

We think that it does. There are no guidelines or limits on the commission when it "reviews" a hearing officer's decision and determines to impose a harsher sanction — the commission does not sit de novo, as was the case in Colten, nor does it sit without knowledge of the original sanction which would have been imposed absent a "review," as was the case in Chaffin. The commission does not review the decision in a vacuum; in this case it adopted the hearing officer's findings of fact and conclusions of law but "specifically rejected" without explanation his finding of mitigating circumstances and "recommended" suspension and instead revoked the license. ". . . [A]dministrative agencies must explain the grounds for their rejection of an administrative judge's disposition of a case." Brennan v. Gilles & Cotting, Inc., 504 F2d 1255, 1264 (4th Cir. 1974). Since the hearing officer based his decision to suspend for one year, which would have been "final" in the absence of "review" by the commission, on mitigating circumstances, the commission must explain its rationale for rejecting his disposition. Indeed, the original vote on Mr. Horne's license by the commission was two for revocation and one for suspension; it was only after the question of a quorum was raised that the vote was changed, again without explanation, to reflect a unanimous decision by those participating that the license be revoked.

We do not and cannot hold Code Ann. § 3A-118 (a) to be unconstitutional, but in order for its application to reach a constitutional result, i.e., afford due process of law to a licensee whose property right in a license is suspended by a hearing officer but revoked on "review" by the commission, we believe it is necessary that whenever the commission "reviews" a hearing officer's decision and imposes a more severe sanction than that "recommended"

the reasons for so doing must affirmatively appear as part of the record. Otherwise the procedure of "review" under Code Ann. § 3A-118 (a) would have a "chilling" effect on a licensee's decision to exercise his right to review — what licensee whose license has been suspended by a hearing officer would risk revocation without explanation by the commission — and opens up the commission to charges of personal or "public pressured" vindictiveness against a licensee when it chooses to "review" a decision of suspension on its own motion and without explanation imposes revocation.

Nor do we believe our decision, that explanation is necessary to insure due process be afforded to a licensee, has the effect of negating the language of Code Ann. § 3A-118 (a) that "[o]n review from the initial decision of such representative the agency shall have all the powers it would have in making the initial decision. . ." Our decision does not prohibit the commission from revoking the license of one whose hearing officer has only "recommended" suspension; but when its decision is to do so, the commission must give its reasons for choosing to impose the stricter sanction.

4. The order of the superior court concludes: "The Commission has not explained why it has adopted a harsher policy in the case of respondent Horne than that imposed upon others found guilty of infractions not involving moral turpitude, and more rigorous than that imposed by the Hearing Officer. Its failure to give such explanation is error and requires that the case be remanded." The judge then reversed and set aside the order of the commission appealed from and remanded the case for further action. This judgment is affirmed, with direction that the commission enter a new order herein, and, should it ultimately decide to increase the sanctions imposed in the first instance, that it clearly set out adequate legal reasons for this action.

*Judgment affirmed with direction. Webb and Marshall, JJ., concur.*