38024. DEPARTMENT OF TRANSPORTATION v. DEL-COOK TIMBER COMPANY, INC. et al.

MARSHALL, Justice.
Del-Cook Timber Company, Inc., and Del-Cook Lumber Company, Inc., (referred to hereinafter as Del-Cook) filed a petition for declaratory judgment, naming as defendant the Georgia Department of Transportation (referred to hereinafter as DOT). In the petition, Del-Cook states that it hauls timber by tractor-trailer rig on the public roads of Georgia. It is further alleged that on various specified occasions Del-Cook has been issued overweight assessment citations by representatives of the DOT, because vehicles operated by it were carrying loads allegedly in excess of the maximum limit specified by law. Code Ann. §§ 95A-959 — 95A-961 (Ga. L. 1973, pp. 947, 1096 — 1101 as amended); DOT Rules 672-3-.01 — 672-3-.03. Del-Cook argues that these Code sections and implementing DOT rules are unconstitutional in various respects. The trial judge agreed and entered an order so ruling. The DOT appeals.

1. Since 1927, there have been wheel-weight, axle-weight, and gross-weight requirements imposed on motor vehicles operated on the highways of this state. Code § 68-402 (Ga. L. 1927, pp. 226, 239);

Code Ann. § 68-405 (Ga. L. 1941, pp. 449, 450; as amended, Ga. L. 1972, pp. 356, 358). Violations of §§ 68-402 and 68-405 were punishable as misdemeanors under Code § 68-9908 (Ga. L. 1927, pp. 226, 243). See *Alexander v. State,* 228 Ga. 179 (184 SE2d 450) (1971); *Dennis v. State,* 226 Ga. 341 (175 SE2d 17) (1970). However, these Code sections were repealed in 1973 by the Georgia Code of Public Transportation. Code Title 95A (Ga. L. 1973, p. 947).

Insofar as is applicable to the issues presented in this case, Code Title 95A provides as follows: Under Code Ch. 95A-3, administration of the state highway system is entrusted to the DOT, and the DOT is delegated certain specific powers and duties under § 95A-302. Section 95A-303 states: "In addition to the powers specifically delegated to it in this Title, the department shall have the authority to perform all acts which are necessary, proper, or incidental to the efficient operation and development of the department and of the State Highway System and of other modes and systems of transportation, and the provisions of this Title shall be liberally construed to that end. Any power vested by law in the department, but not implemented by specific provisions for the exercise thereof, may be executed and carried out by the department in a reasonable manner, pursuant to such rules, regulations, and procedures as the department may adopt and subject to such limitations as may be provided by law."

Today, the wheel-weight, axle-weight, and gross-weight requirements are found in § 95A-959. Section 95A-959 (a) (as amended, Ga. L. 1978, pp. 1965, 1966) provides in part: "If the driver of any vehicle can comply with the requirements of this section by shifting the load and does so when requested by the proper authority, said driver shall not be held to be operating in violation of this section." In addition, § 95A-959 (b) contains certain exceptions to the weight limitations of § 95A-959 (a), and § 95A-961 authorizes the DOT to issue permits to operate motor vehicles whose weight exceeds the maximum limit specified by law.

Under § 95A-960 (a) (Ga. L. 1973, pp. 947, 1098), "Any person who violates the load limitation provisions of section 95A-959 shall be conclusively presumed to have damaged the public roads, including bridges, of this State by reason of such overloading and shall recompense the State for such damage in accordance with the following schedule: For the first 1,000 pounds of excess weight, $.008 per pound; plus $0.15 per pound for the next 2,000 pounds of excess weight; plus $.03 per pound for the next 2,000 pounds of excess weight; plus $.04 per pound for the next 3,000 pounds of excess weight; plus $.05 per pound for all excess weight over 8,000 pounds."

Section 95A-960 (a) (as amended, Ga. L. 1978, pp. 1989, 1991)

also provides: "Within 15 days after the issuance of the citation, the owner or operator of any offending vehicle shall pay the amount of the assessment to the Department or request an administrative determination of the amount and validity of the assessment. If an administrative hearing is requested, it shall be held in accordance with the Georgia Administrative Procedure Act (Title 3A), and the department's rules and regulations. Any person who has exhausted all administrative remedies available within the department and who is aggrieved by a final order of the department, is entitled to judicial review in accordance with the Georgia Administrative Procedure Act."

Likewise, DOT Rule 672-3-.03 (1) requires the owner or operator of an offending vehicle to pay the assessment or request an administrative review within 15 days after issuance of the citation. Under DOT Rule 672-3-.03 (2), the administrative hearing is conducted under the Administrative Procedure Act by a hearing officer appointed by the DOT. Under DOT Rule 672-3-.03 (3), an aggrieved party may within 30 days of the hearing officer's determination submit in writing a ,request for Department review.

At the time the administrative hearings and trial of this case were conducted, DOT Rule 672-3-.03 (2) further provided: "Should the designated hearing officer find adversely to the aggrieved party, the said officer shall issue an order requiring the immediate payment of any monies owing under the assessment and citation thereon. Such payment shall be a condition precedent to the right to an appeal from the designated hearing officer's determination to a Department review. Such payment shall, however, be without prejudice, should the payor, pursuant to Ga. Laws 1974, p. 1422, appeal from the payment and its validity to a Department review."

However, effective April 9, 1981, Ga. L. 1981, pp. 998, 999 added subsections (e) through (g) to § 95A-960; and § 95A-960 (e)(2) now provides: "Whenever any person, firm, or corporation requests an administrative review, it shall be held in accordance with Title 3A, the 'Georgia Administrative Procedure Act'; and in the event that the commissioner or his designee, hearing officer, or others find in favor of the department, the person, firm, or corporation shall pay the assessment within 30 days after the issuance of a final decision by the agency, or if judicial review is had in accordance with the 'Georgia Administrative Procedure Act,' then within 30 days after final judicial review is terminated . . ."

2. The trial judge ruled that the previously-cited Code sections and the implementing DOT Rules are unconstitutional on the following grounds:

(1) Section 95A-303 is overly broad in its delegation of enforcement authority to the DOT;

(2) The General Assembly cannot delegate legislative functions to administrative boards;

(3) The requirement that monies be paid prior to a final determination of whether a violation has occurred is a denial of due process;

(4) Section 95A-960's conclusive presumption of damage to the roads caused by a violation of the load-limitation provisions of § 95A-959 cannot withstand a due process attack;

(5) Conduct of the administrative hearing by an officer of the DOT is a violation of due process, as is review of the hearing officer's decision by the commissioner;

(6) The classification of timber haulers in the same category as other freight haulers is irrational, discriminatory, and therefore a violation of due process for the following reasons: other freight haulers whose load is permissible in gross yet impermissible on a per-axle basis are given the option of shifting their load, whereas, as a practical matter, timber haulers do not have such an option;

(7) It is a violation of due process to require that the owner or operator of a vehicle who has been issued a citation initiate the administrative proceeding in order to contest the assessment;

(8) Failure to provide for a jury trial in these administrative hearings is a circumvention of the people's constitutional right to trial by jury (Code Ann. § 2-4401; Art. VI, Sec. XV, Par. I of the Ga. Constitution of 1976);

(9) The venue provisions of the Georgia Constitution (Code Ann. § 2-4306; Art. VI, Sec. XIV, Par. VI of the Ga. Constitution of 1976) are also infringed because of the possibility that a violator will be tried in a county other than the county of his or her residence.

For reasons which follow, we hold that the trial judge erred in rendering each of the foregoing rulings.

3. The enforcement authority granted to the DOT by § 95A-303 is neither overbroad nor an illegal delegation of legislative functions.

It is true that, "[t]he legislative power of the State shall be vested in a General Assembly which shall consist of a Senate and House of Representatives." Code Ann. § 2-701 (Art. III, Sec. I, Par. I of the Ga. Constitution of 1976). However, it has long been recognized that the General Assembly is empowered to enact laws of general application and then delegate to administrative officers or agencies the authority to make rules and regulations necessary to effectuate such laws. See *Scoggins v. Whitfield Finance Co.,* 242 Ga. 416 (249 SE2d 222) (1978); *Moseley v. Garrett,* 182 Ga. 810 (187 SE 20) (1936);

*Abbott v. Commissioners,* 160 Ga. 657 (129 SE 38) (1925); *Southern R. Co. v. Melton,* 133 Ga. 277 (65 SE 665) (1909); *Ga. R. v. Smith,* 70 Ga. 694 (1883); *Zuber v. Sou. R. Co.,* 9 Ga. App. 539 (71 SE 937) (1911). See also *Bentley v. Chastain,* 242 Ga. 348 (249 SE2d 38) (1978).

(a) Thus, it was held in *Ga. R. v. Smith,* supra, that the General Assembly was authorized to establish a railroad commission and delegate to it the authority to fix reasonable and just freight and passenger rates. "The difference between the power to pass a law and the power to adopt rules and regulations to carry into effect a law already passed, is apparent and strikingly great, and this we understand to be the distinction recognized by all of the courts as the true rule in determining whether or not in such cases a legislative power is granted." *Ga. R. v. Smith,* supra, 70 Ga. at p. 699.

(b) In *Southern R. Co. v. Melton,* supra, this court upheld a rule of the railroad commission imposing a penalty on railroad companies failing to furnish cars to shippers. In so holding, this court cited several foreign decisions refusing to invalidate other administrative regulations as unconstitutional delegations of legislative power. In citing the decision of the Indiana Supreme Court in Blue v. Beach, 155 Ind. 121 (56 NE 89) (1900), this court stated: "In Blue v. Beach, . . ., it was held, that a statute which established a State board of health, in order to secure and promote the public health, and which invested such board with power to adopt ordinances, rules, and regulations necessary to secure such objects, was not unconstitutional as being a delegation of legislative power, as the inhibition against so doing did not extend to prevent the granting to an administrative board of power to adopt rules and regulations to carry out a particular purpose; that rules and by-laws adopted by such board of health had the force and effect of laws, but must be reasonable, and not in conflict with the constitution, or opposed to the fundamental principles of justice, or inconsistent with the powers conferred upon the board." *Southern R. Co. v. Melton,* supra, 133 Ga. at p. 288.

(c) In *Scoggins v. Whitfield Finance Co.,* supra, we upheld the validity of a statutory grant of authority to the Georgia Industrial Loan Commissioner "to make all rules and regulations not inconsistent with the provisions of [the Industrial Loan Act] which in his judgment shall be necessary and appropriate to accomplish the purposes and objectives of [the Act] . . ." Code Ann. § 25-306 (a). In so holding, we stated: "It has often been held that the constitutional restriction on delegation of legislative powers does not prevent the grant of legislative authority to some ministerial officer, board or other tribunal to adopt rules, by-laws, or other ordinances for its government, or to carry out a particular purpose. 'Thus, while it is

necessary that a law, when it comes from the lawmaking power shall be complete, still there are many matters as to methods or details which the legislature may refer to some designated ministerial officer or board.' [Cits.]" *Scoggins v. Whitfield Finance Co.,* supra, 242 Ga. at p. 417.

(d) "In the case of *Zuber v. So. Ry. Co.,* 9 Ga. App. 539 (71 SE 937), it was said: 'The constitution makes the General Assembly the legislative body of the State, and it can not delegate its general legislative powers. Nevertheless it may confer upon administrative bodies quasi-legislative functions which it itself might perform, but could not so adequately perform directly as it could by delegating them.' " *Abbott v. Commissioners,* supra, 160 Ga. at p. 666.

(e) "An administrative agency is 'a governmental authority, *other than a court and other than a legislative body,* which affects the rights of private parties through either adjudication or rulemaking.' Davis, Treatise on Administrative Law, Vol 1, § 1:2 at p. 9 (2d Ed., 1978). (Emphasis supplied.) Its powers are well described by the Maryland Court of Appeals: 'The primary function of administrative agencies is to advance the will and weal of the people as ordained by their representatives — the Legislature. These agencies are created in order to perform activities which the Legislature deems desirable and necessary to forward the health, safety, welfare and morals of the citizens of this State. While these agencies at times perform some activities which are legislative in nature and thus have been dubbed as quasi-legislative duties, they in addition take on a judicial coloring in that frequently, within the exercise of their power, they are called upon to make factual determinations and thus adjudicate, and it is in that sense that they are also recurrently considered to be acting in a quasi-judicial capacity. This dual role which administrative agencies play has long been accepted in this State as being constitutionally permissible. (Cits.) . . .' Dept. of Natural Resources v. Linchester Sand &c. Corp., 274 Md. 211, 222 (334 A2d 514, 522) (1975)." *Bentley v. Chastain,* supra, 242 Ga. at p. 350.

4. It cannot be said that the administrative proceedings under review are lacking in due process, either because the person accused of violating § 95A-959 must initiate the proceedings, or because prior to April of 1981 the assessment had to be paid before the proceedings culminated.

(a) "The due-process clause . . . [does] not guarantee to the citizen of the State any particular form or method of State procedure. Its requirements are satisfied if he has reasonable notice and opportunity to be heard, and to present his claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it. *City of Macon v. Benson,* 175

Ga. 502 (166 SE 26)." *Zorn v. Walker,* 206 Ga. 181, 182 (56 SE2d 511) (1949). See generally, Mathews v. Eldridge, 424 U. S. 319 (96 SC 893, 47 LE2d 18) (1976); Fuentes v. Shevin, 407 U. S. 67 (92 SC 1983, 32 LE2d 556) (1972); Boddie v. Connecticut, 401 U. S. 371 (91 SC 780, 28 LE2d 113) (1971); Goldberg v. Kelly, 397 U. S. 254 (90 SC 1011, 25 LE2d 287) (1970).

Here, the plaintiffs were afforded an opportunity for a hearing before payment of the assessment, and notice of this right was given in the overweight assessment citation. Due process requires no more.

(b) In addition, it could be argued that what is involved here is the collection of state revenues, which constitutes a situation that has been held to justify postponing notice and a hearing until after the property seizure. *Gainesville-Hall County &c. Inc. v. Blackmon,* 233 Ga. 507 (212 SE2d 341) (1975) and cits.

5. Nor can it be said that conduct of the administrative hearing by an employee of the DOT, with review of the hearing officer's decision by the commissioner, results in a denial of due process.

(a) " 'In order to comply with the requirements of due process, the hearing granted by an administrative body must be a full and fair one, before an impartial officer, board, or body free of bias, hostility, and prejudgment . . . The fact that the administrative agency is both the accuser and judge does not deprive accused of due process of law, especially where an appeal from the determination of the agency may be had to the courts.' 16A CJS 862, § 628B (2)." *Clary v. Mathews,* 224 Ga. 82, 83 (160 SE2d 338) (1968).

(b) It has even been held that combination of investigative and adjudicative functions in the same persons in an administrative agency is not itself a violation of due process. Withrow v. Larkin, 421 U. S. 35 (95 SC 1456, 43 LE2d 712) (1975) and cits.

"Concededly, a 'fair trial in a fair tribunal is a basic requirement of due process.' In re Murchison, 349 U. S. 133, 136 (1955). This applies to administrative agencies which adjudicate as well as to courts. Gibson v. Berryhill, 411 U. S. 564, 579 (1973). Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.' In re Murchison, supra, at 136; cf., Tumey v. Ohio, 273 U. S. 510, 532 (1927). In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him.

"The contention that the combination of investigative and

adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." (Footnotes omitted.) Withrow v. Larkin, supra, 421 U. S. at p. 46.

6. Section 95A-960's conclusive presumption of damage to the public roads caused by overweight vehicles does not deprive the person accused of violating § 95A-959 of any constitutional right.

It is true that the United States Supreme Court has held that in certain contexts (but not in others) it is a deprivation of due process and/or equal protection for the legislature to enact a conclusive statutory presumption denying a party to a judicial or administrative proceeding the opportunity to rebut the presumption in a particular case. Cf., Usery v. Turner Elkhorn Mining Co., 428 U. S. 1 (96 SC 2882, 49 LE2d 752) (1976); Weinberger v. Salfi, 422 U. S. 749 (95 SC 2457, 45 LE2d 522) (1975) with Vlandis v. Kline, 412 U. S. 441 (93 SC 2230, 37 LE2d 63) (1973); Stanley v. Illinois, 405 U. S. 645 (92 SC 1208, 31 LE2d 551) (1972).

However, we have no trouble in holding that it is constitutionally permissible for the state to enact a statute providing that any person who operates an overweight motor vehicle on the public roads shall be conclusively presumed to have damaged the roads, and requiring such person to recompense the state for such damage in accordance with a schedule pegging the amount of the damages to the poundage of excess weight.

It has long been recognized that overweight vehicles may reasonably be supposed to damage the public roads. *Nagle v. Augusta,* 5 Ga. 546 (1848). Decisions on the question have uniformly held that under their police power the states are authorized to enact laws regulating the weight of vehicles on public highways. *Alexander v. State,* 228 Ga. 179, supra, and cits. This necessarily includes the authority to impose penalties or fines for violations of such laws. See *Nagle v. Augusta,* supra. The damages assessed under § 95A-960 are in substance civil penalties or fines. There is certainly no constitutional requirement that the person accused of operating an overweight vehicle be given an opportunity to avoid the penalty or fine by proving that no perceptible damage to the roads in fact occurred in his case.

7. The failure of § 95A-959 to differentiate between timber

haulers and other freight haulers does not render the statute unconstitutional.

(a) In *Alexander v. State,* supra, 228 Ga. at p. 182, this court rejected the argument that one of the former overweight vehicle statutes, former Code Ann. § 68-405, denied due process and equal protection in that it discriminated in favor of a driver who was hauling a product that could be redistributed and penalized a person who was hauling a product that could not be redistributed.

(b) "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78 [31 SC 337, 340, 55 LE 369]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U. S. 61, 69-70 [33 SC 441, 443, 57 LE 730]. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U. S. 420, 426 [81 SC 1101, 1105, 6 LE2d 393]." Dandridge v. Williams, 397 U. S. 471, 485 (90 SC 1153, 25 LE2d 491) (1970). *State Farm &c. Ins. Co. v. Five Transp. Co.,* 246 Ga. 447, 450 (271 SE2d 844) (1980).

8. There is no constitutional right to a jury trial in these administrative proceedings.

(a) "The rule in Georgia on the right to a trial by jury is clear. In construing the provision of the Georgia Constitution which states that the right of trial by jury shall remain inviolate, this court has consistently held that in civil actions the right of a jury trial exists only in those cases where the right existed prior to the first Georgia Constitution, and the Constitution guarantees the continuance of this right unchanged as it existed at common law. *Metropolitan Cas. Ins. Co. v. Huhn,* 165 Ga. 667 (142 SE 121) (1927)." *Bell v. Cronic,* 248 Ga. 458 (1) (283 SE2d 476) (1981). As held in *Huhn,* supra, the right of jury trial does not apply to special proceedings not known at the time of adoption of the first Constitution, or subsequently created or provided by statute.

(b) "NLRB v. Jones & Laughlin Steel Corp., 301 U. S. 1 (1937) . . . stands for the proposition that the Seventh Amendment [right to jury trial] is generally inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administrative adjudication . . ." (Footnote omitted.) Curtis v. Loether, 415 U. S. 189, 194 (94 SC 1005, 39 LE2d 260) (1974).

9. The person issued an overweight vehicle assessment does have at least the statutory right to prosecute the action for judicial review of the administrative decision in the superior court of the county of his or her residence.

As previously stated, appeals from overweight assessment citations are governed by the Administrative Procedure Act. Under the Administrative Procedure Act, a person aggrieved by an administrative agency decision has a right to seek judicial review of the decision after the exhaustion of administrative remedies. Code Ann. § 3A-120 (a). "Proceedings for review are instituted by filing a petition within 30 days after the service of the final decision of the agency or, if a rehearing is requested, within 30 days after the decision thereon. Such petition may be filed in the superior court of Fulton county *or in the superior court of the county of residence of the petitioner.* When the petitioner is a corporation, the action may be brought in the superior court of Fulton county or the county where the petitioner maintains its principal place of doing business in Georgia . . ." (Emphasis supplied.) Code Ann. § 3A-120 (b).

For these reasons, the judgment of the trial court is reversed.

*Judgment reversed. All the Justices concur.*

DECIDED JANUARY 6, 1982.

*Michael J. Bowers, Attorney General, Michael E. Hobbs, Assistant Attorney General,* for appellant.

*M. Dale English, J. Reese Franklin, Bowles & Bowles, Jesse G. Bowles,* for appellees.