A96A1390, A96A1391. GEORGIA BOARD OF DENTISTRY
v. PENCE; and vice versa.
(478 SE2d 437)

SMITH, Judge.

After receiving several patient complaints, the Georgia Board of Dentistry initiated disciplinary proceedings against Deborah L. Pence, D.D.S. At a lengthy evidentiary hearing before a hearing officer, Pence presented evidence and testimony, including an expert witness and several patients. The hearing officer determined that some of the dental work complained of was adequate or that there was a failure of proof, but also determined that Pence had performed other dental work that did not conform to minimal standards of acceptable and prevailing dental practice. The hearing officer recommended suspension of Pence's license for ninety days, with enforcement suspended pending administrative probation for a period of three years, and a fine of $2,500. Pence appealed this decision to the full Board of Dentistry.

After an additional hearing, the full Board adopted the findings of fact and conclusions of law of the hearing officer. The full Board determined, however, that "based on the seriousness and magnitude of the evidentiary findings; testimony of all consultants based on their examination of respective patients; testimony of witness Dr. Robert Smith; and testimony of other witnesses, and in keeping with the consistency of previous sanctions for similar violations" it would increase the sanctions imposed on Pence, suspending enforcement of only one month of the ninety-day license suspension, and placing Pence on probation for five years.

Pence sought judicial review of the Board's decision pursuant to OCGA § 50-13-19. The superior court determined that due process

violations had occurred, reversed the full Board's determination, and dismissed the complaint against Pence. This Court granted the Board's application for discretionary appeal, and Pence cross-appealed, alleging that the trial court erred in refusing to rule on several additional grounds proposed in the order.[1] For the reasons stated below, we reverse the superior court's dismissal of the decision of the full Board but affirm on the cross-appeal.

1. Pence contends these appeals should be transferred to the Supreme Court because they raise constitutional issues. The Supreme Court, however, will not rule on a constitutional question unless it clearly appears in the record that the trial court "distinctly passed" on the point. *Raskin v. Wallace*, 215 Ga. App. 603, 604 (1) (451 SE2d 485) (1994). The trial court declined to rule on the basis proposed by Pence, that Rule 295-5-.05 of the Joint Secretary of the State Examining Boards was unconstitutional. Moreover, the Supreme Court's exclusive appellate jurisdiction under Ga. Const. 1983, Art. VI, Sec. VI, Par. II includes "all cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question"; it does not extend to questions of constitutionality of an administrative regulation. *Brosnan v. Undercofler*, 220 Ga. 239 (138 SE2d 314) (1964). This is therefore not a proper case for transfer to the Supreme Court.

2. In the main appeal, the Board contends the superior court erred in reversing and dismissing the Board's order on the ground that three Board members also sat on the investigative committee that conducted a preliminary investigation. We agree with the Board that this basis for reversal was improper.

(a) The superior court's reasoning is foreclosed by well-established Georgia authority that combining the functions of investigation and adjudication in an administrative agency does not violate the requirements of due process. "In order to comply with the requirements of due process, the hearing granted by an administrative body must be a full and fair one, before an impartial officer, board, or body free of bias, hostility, and prejudgment. The fact that the administrative agency is both the accuser and judge does not deprive [the] accused of due process of law, especially where an appeal from the determination of the agency may be had to the courts. It has even been held that combination of investigative and adjudicative functions in the same persons in an administrative agency is not itself a violation of due process." (Citations and punctuation omitted.) *Dept. of Transp. v. Del-Cook Timber Co.*, 248 Ga. 734,

---

[1] It appears from the record that the superior court, in a proposed order presented by Pence, struck out several paragraphs giving additional grounds for the court's ruling.

740 (5) (a), (b) (285 SE2d 913) (1982). See also *In the Matter of: Inquiry Concerning a Judge*, 265 Ga. 843, 846 (2) (462 SE2d 728) (1995) ("[i]t is well-established that the exercise of the combination investigative and adjudicative functions of an agency does not, per se, violate the requirements of due process. [Cit.]"). While Pence cites a number of cases from other jurisdictions in support of her position, the Georgia law as established by the Supreme Court is clear.

(b) The Board did not violate its own rules in allowing three of its members to undertake this dual function, as contended by Pence. Pence points to no legal authority or Board rule to support her contention, and we find none. While Pence claims the Executive Director admitted that "only the Board members other than the investigative committee vote on the cases," the Director's testimony did not refer to the post-hearing review function of the full Board, as Pence now claims. The testimony concerned the appointment of a consultant before the determination to proceed with a notice of hearing. The Director stated that the purpose of excluding members of the investigative committee from the decision to proceed was to maintain the anonymity of the respondent during the initial investigation. Obviously, anonymity could no longer be maintained with respect to the full Board once Pence appeared in person and presented her case. Pence's counsel acknowledged at the time that his objection went to the investigative procedures and the appointment of a consultant. At the time of the testimony, the initial hearing was not complete, no initial decision had been rendered, and the post-hearing review by the full Board would not occur until 11 months later and could not have been predicted by Pence.

Finally, Pence, though aware of the presence of investigative committee members at the full Board hearing, failed to object to their participation in deliberations either before or after the hearing. See Division 5, below.

The trial court erred in reversing the Board's decision and dismissing the disciplinary proceeding on the ground that the dual function of three Board members amounted to a due process violation.

3. The Board also asserts the superior court erred in finding that the Board relied upon the contents of the investigative committee's files in reaching its decision, and thus relied upon matters outside the record. The only evidence supporting Pence's contention appears to be a mere verbal slip. In orally pronouncing the Board's decision at the hearing, the president stated: "The Georgia Board of Dentistry . . . finds that the seriousness and magnitude of the evidentiary finding *of the investigative committee*, testimony of all consultants, based on their examination of respective patients, testimony of witness Dr. Robert Smith and testimony of other witnesses, and in keeping with the consistency of previous sanctions of similar violations

recommends the following. . . ." (Emphasis supplied.)

When this wording was called to his attention, the hearing officer placed each member of the Board on the record and questioned each individually regarding the consideration of matters outside the record. Each member of the Board testified unequivocally that he or she did not consider any information in deliberations that was not a part of the hearing record as developed before the hearing officer. The president of the Board added that "proper procedure was followed and that nothing was used that was not available to all parties involved. We did not open any investigative files that neither you nor the Hearing Officer were privy to, and we stand by that as a clarification of the statement." The otherwise virtually identical language of the Board's "Final Decision" filed with the Joint Secretary of the State Examining Boards does not contain the four words complained of.[2]

It is a "well settled principle that public officials shall be presumed to have performed their duties and acted in good faith unless clearly proven otherwise. [Cits.]" *Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183, 192 (2) (c) (336 SE2d 562) (1985). See also *Dept. of Transp. v. Del-Cook Timber Co.*, 248 Ga. at 741 (5) (b). An apparent verbal slip, corrected and confirmed by each individual Board member, without more, does not constitute sufficient evidence to overcome this presumption, and the superior court erred in so ruling.

4. The Board also contends that the superior court erred in dismissing the disciplinary action on the basis that the Board failed to state with specificity its reasons for increasing the sanctions on Pence. *Ga. Real Estate Comm. v. Horne*, 141 Ga. App. 226 (233 SE2d 16) (1977), requires that when a reviewing board or commission imposes a more severe sanction than that recommended by the hearing officer, "the reasons for so doing must affirmatively appear as part of the record." 141 Ga. App. at 234 (3). The final decision of the Board, as noted in Division 3, stated specific reasons for increasing the penalty, including the goal of consistency with sanctions for similar violations. *Horne* does not require that the Board make separate findings of fact on the question of sanctions, introduce evidence on its own motion, or, as Pence suggests, make a comparison on the record with the names and factual details of specific cases involving other dentists.[3] The superior court erred in imposing the additional

---

[2] We note that in the context of judicial proceedings, "what the judge orally declares is no judgment until the same has been reduced to writing and entered as such. [Cits.]" *Tyree v. Jackson*, 226 Ga. 690, 694 (2) (177 SE2d 160) (1970).

[3] We note that such a requirement has at least the potential to violate the confidentiality provisions of the Board's rules. See Rule 150-4-.01 (2).

requirement of specifying factual data supporting the Board's reason for imposing a more severe sanction on Pence.

5. In Pence's cross-appeal, she contends she was denied due process because her expert was unable to conduct an independent dental examination of the complainants, and that Rule 295-5-.05 of the Joint Secretary of the State Examining Boards forbidding such physical examinations is unconstitutional as violative of due process and equal protection. It does not appear that Pence has an absolute right to conduct discovery in an administrative action. See generally *Ga. State Bd. of Dental Examiners v. Daniels*, 137 Ga. App. 706, 709 (3) (224 SE2d 820) (1976). We do not reach that issue, however, because Pence failed to raise it below.

In a motion filed several months after the initial hearing, Pence contended she had been denied the right to depose witnesses and to inspect evidence, but she never raised the issues of an independent medical examination or the constitutionality of Rule 295-5-.05. Moreover, it is possible that Pence could have sought immediate judicial review of an adverse agency ruling, had she properly raised the issue before the agency. OCGA § 50-13-19 (a); *Wills v. Composite State Bd. of Med. Examiners*, 259 Ga. 549, 550 (1) (384 SE2d 636) (1989). "The scope of judicial review is limited under the [Administrative Procedure] Act to those objections upon which the agency has had an opportunity to rule. The fact that one basis, or even the sole basis, of a respondent's complaint as to the hearing officer's initial decision is a constitutional attack, does not eliminate the necessity for agency review as a prerequisite to judicial review." (Citations and punctuation omitted.) *Dept. of Public Safety v. Foreman*, 130 Ga. App. 71, 72 (2) (202 SE2d 196) (1973).

Pence's reliance upon *Flint River Mills v. Henry*, 234 Ga. 385 (216 SE2d 895) (1975) is misplaced. In that decision, the Supreme Court recognized that a challenge to the constitutional validity of a statute before an administrative officer "appears futile at the time of its making." 234 Ga. at 386. The Supreme Court nevertheless required that such action be taken, despite its apparent (but not actual) futility: "Plaintiffs could have raised this constitutional challenge in the hearing before the deputy director. If they had, the challenge would have been ruled upon on the appeal to the superior court. . . . [Cits.]" Id. This observation supported the court's holding that plaintiffs had no right to maintain a separate declaratory judgment action challenging the constitutionality of administrative procedures. Id. at 387. Moreover, the Supreme Court has continued to rely on *Flint River Mills* in support of decisions holding that a constitutional challenge must be raised in the agency proceeding. See, e.g., *Ga. Real Estate Comm. v. Burnette*, 243 Ga. 516 (3), 517 (255 SE2d 38) (1979).

6. In a related enumeration of error, Pence contends the disciplinary proceeding should be dismissed because the Board or its expert witness spoliated evidence. She contends spoliation occurred when the subsequent treating dentist removed or repaired Pence's work on a patient before Pence or her expert had an opportunity to inspect it.[4] In support of this contention, she cites a number of cases from other jurisdictions and one Georgia decision, *Chapman v. Auto Owners Ins. Co.*, 220 Ga. App. 539 (469 SE2d 783) (1996). In all those decisions, however, litigation was pending or contemplated at the time of the alleged spoliation; in *Chapman*, suit had already been filed. 220 Ga. App. at 540. Here, in contrast, Pence's former patient sought treatment from another dentist before any complaint was made to the Board.

The cases cited by Pence involve the alteration or destruction of inanimate objects such as electrical parts (in *Chapman*), seat belts, or tires, or the destruction of a dead body subject to autopsy. In contrast, the alleged "spoliation" in this case was the repair and replacement of dental work in a living patient. The dental work was causing the patient discomfort and, according to the treating dentist, was "leaking" and was not seated or sealed, allowing bacteria and food particles to enter the tooth and cause decay, bleeding, and irritation. We cannot and will not require a living human being to endure pain or the risk of infection to preserve the "status quo" for inspection by Pence or her expert. Carrying Pence's argument to its logical extreme, a tortfeasor could accuse a victim's physician or surgeon of "spoliation" for treating the injuries inflicted by the tortfeasor. This enumeration of error is without merit.

7. Pence also contends that the evidence presented amounts to a mere difference of opinion among dentists regarding the use of mercury-silver amalgam fillings and therefore did not constitute a sufficient basis for discipline. Pence relies on the statement in *Hayes v. Brown*, 108 Ga. App. 360, 366 (2) (133 SE2d 102) (1963) that "[t]estimony showing a mere difference in views between surgeons as to operating techniques, or as to medical judgment exercised, is insufficient to support an action for malpractice where it is shown that the procedure preferred by each, or the judgment exercised, is an acceptable and customary method." Id. In *Hayes*, however, the plaintiff's expert witness "declined to designate any of the differences in operating technique as anything more than matters of medical judgment for the physician in charge *in accordance with accepted medical standards at the time* the operation was performed."

---

[4] Despite Pence's repeated contentions that this dentist was a consultant, no evidence was presented that this witness was appointed by the Board to serve as a consultant on this patient's case; he was a subsequent (and prior) treating dentist selected by the patient.

(Emphasis supplied.) Id. Here, in contrast, two dentists testified that aspects of Pence's work unrelated to the removal of amalgam fillings did not conform to minimal standards of acceptable and prevailing dental practice.

Under the Administrative Procedure Act, the superior court and this Court must accept the factual findings of the Board if there is any evidence to support them and must construe the evidence in favor of the decision rendered. *Ga. Power Co. v. Ga. Public Svc. Comm.*, 196 Ga. App. 572, 580-581 (5) (396 SE2d 562) (1990). "The presence of conflicting evidence, including dueling experts, is sufficient to satisfy the any evidence standard. [Cit.]" Id. at 580. While Pence asserts that this disciplinary action is pretextual and based entirely on the Board's opposition to the removal of amalgam fillings, under OCGA § 50-13-19 (h) neither this Court nor the superior court can substitute its judgment on disputed issues of fact for that of the agency. See generally *Sawyer v. Reheis*, 213 Ga. App. 727, 728-729 (1) (445 SE2d 837) (1994).

8. Pence's contention that two witnesses for the Board were incompetent to testify is also without merit. Pence's allegations that one or both witnesses were too closely connected to members of the Board, had an interest in the proceedings, or harbored ill-will directed against her personally go to the weight or credit of the witnesses, not their competency to testify. "Any possible bias or interest on the part of the expert witness himself was admissible as reflecting on his credibility. OCGA § 24-9-68. It would not, however, render him incompetent to testify. OCGA § 24-9-1 (a)." *Rogers v. State*, 180 Ga. App. 310, 311 (2) (348 SE2d 888) (1986).[5]

9. Pence also contends that it was improper for the dental hygienist member of the Board to deliberate and vote on her appeal. Pence, however, did not raise this objection at the time of the full Board hearing, and it is therefore waived. See Division 5, above.

10. Pence contends that the "beyond a reasonable doubt" standard of proof applicable to criminal cases should have been required in the administrative hearing. OCGA § 50-13-15 (1) provides, however, that "[t]he rules of evidence as applied in the trial of civil nonjury cases in the superior courts shall be followed" in administrative hearings. OCGA § 24-4-3 in turn provides that "[i]n all civil cases a preponderance of evidence is considered sufficient to produce mental conviction."

11. Pence's contention that she was improperly denied her right to a jury trial in these proceedings is foreclosed by *Dept. of Transp. v.*

---

[5] As noted below, OCGA § 50-13-15 makes the rules of evidence as applied in civil non-jury cases applicable to the administrative hearing at issue here.

*Del-Cook Timber Co.*, 248 Ga. at 742 (8). ("There is no constitutional right to a jury trial in these administrative proceedings.")

*Judgment affirmed in Case No. A96A1391. Judgment reversed in Case No. A96A1390. Pope, P. J., and Andrews, J., concur.*

DECIDED NOVEMBER 19, 1996.

*Michael J. Bowers, Attorney General, Brenda H. Cole, Deputy Attorney General, Janet B. Wray, Helen O'Leary, Assistant Attorneys General,* for appellant.

*Webb, Carlock, Copeland, Semler & Stair, Philip P. Taylor, Douglas W. Smith,* for appellee.